## Fecher, Appellant, *v.* Allegheny County.

Argued October 9, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Van A. Barrickman,* with him *Charles M. Barrickman,* for appellant.

*Mayer Sniderman,* Assistant County Solicitor, with him *J. P. Fife,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE DREW, November 27, 1933:

Plaintiff is the owner of residential property located on East Beaver Street in the Borough of Glenfield, extending back several hundred feet to the Ohio River. East Beaver Street is parallel and adjacent to the main line of the Pennsylvania Railroad, and prior to 1926 was part of the Lincoln Highway, which crossed the four tracks of the railroad at grade at Dixmont Crossing and Glenfield Crossing, respectively about 1,700 feet east and 1,000 feet west of plaintiff's property. In 1926, as a part of a great public improvement known as the Ohio River Boulevard, these crossings were vacated, and a new highway was built between them along the side of a steep hill on the opposite side of the railroad. In order to provide access to the new road for those living on East Beaver Street, which was completely cut off by the closing of the crossings, a bridge was erected over the tracks, with a ramp leading thereto from a point on East Beaver Street opposite the old Glenfield crossing. The public service commission awarded plaintiff $1,000 as damages. From this award she appealed to the Court of Common Pleas of Allegheny County. At the trial, the jury returned a verdict for defendant. Plaintiff appealed, assigning as error the exclusion of certain evidence, the

overruling of her motion for a new trial, and the entry of judgment on the verdict.

It is undeniably true that the closing of the grade crossings has placed plaintiff's land in a cul-de-sac from which the only means of ingress and egress by road is the bridge over the railroad tracks. It is now necessary for one driving a vehicle to go to the end of East Beaver Street, up the ramp, and over the bridge, in order to travel either east or west. This course is approximately half a mile longer for one going to the east, and about 1,700 feet longer for one going to the west. The result of this change, so far as vehicular traffic is concerned, has been to substitute one safe, though slightly longer, mode of access to plaintiff's property from both directions which were formerly served by two shorter but very dangerous routes, both of which crossed at grade the main line of an important railroad. With regard to pedestrian traffic, the situation is little altered. At the Glenfield station, located just west of the old Glenfield crossing, an underpass, which existed prior to the improvement, provides a means for pedestrians to get to the other side of the railroad without crossing the tracks. In addition, steps now lead from the bridge to the level of the street, about 40 feet below. The result of this change, so far as pedestrian traffic is concerned, has been to substitute for the Dixmont crossing the bridge over the railroad. However, inasmuch as the main part of Glenfield is to the west of the railroad station, it is in that direction that most pedestrians from plaintiff's house would go, and that line of access has not been changed.

After the presentation of these facts, the learned trial court ruled that plaintiff was not entitled to damages by reason of any deprivation of access to her property, or by the diversion of traffic from East Beaver Street, and that therefore it was improper to allow the witnesses to take such matters into consideration in estimating the depreciation in value of plaintiff's property as a result

of the improvement. This ruling, plaintiff contends, was error. It is argued that the question of whether or not her property was damaged was for the jury, and that therefore the evidence offered by her to show damages from these causes should have been admitted. Upon the facts of this case, there is no merit in either contention.

The basis of plaintiff's complaint on the score of deprivation of access is that it is now necessary for one to travel a slightly greater distance from her property than formerly in order to reach the main highway at the sites of the old crossings. It must now be regarded as settled that such a situation cannot of itself give rise to a claim for damages: Spang & Co. v. Com., 281 Pa. 414; Rzasa v. Pub. Ser. Com., 102 Pa. Superior Ct. 317; Apple v. Phila., 103 Pa. Superior Ct. 458 (in which we refused to hear an appeal). As we said in the Spang case, speaking through Mr. Justice KEPHART, "While an abutting owner's special right in a street as a means of access to his property is not limited to the part of the street on which his property abuts, his right is that of reasonable access in either direction which a street permits. Every slight inconvenience cannot be compensated in damages. ...... When the properties are so situated that their ingress and egress are affected by a change of grade, impairing the value of the land, the owners are entitled to damages: Mellor v. Phila., 160 Pa. 614. But where, as here, there is afforded safe and convenient access to the property, they could not be said to have suffered any permanent, substantial and proximate injury as the result of the change. ...... The underlying principle is, damages will not be allowed where the effect of the disturbance to the highway is merely to cause the owner to travel a short distance farther in order to reach the system of streets in that direction. Actual damage is the test in a case of interference with access to and from the property." True, in the cases cited, the substitution was only for the mode of access in one direction, whereas in the instant case the substitution affects

the mode of access in two directions. This, however, makes no difference; the same principle is applicable here as there, because the substituted mode of access completely takes the place of both the old ways. Considering the subject of access alone, it is evident that the access to plaintiff's property has been interfered with, if at all, only slightly, and certainly not in a way that can be said to have damaged the property in any respect. The result of the improvement has been to substitute for the dangers and delays of two busy grade crossings a safe and expeditious way to reach plaintiff's house. As was said by the court below, "The entire situation as it presents itself after and as affected by the improvement does not justify the plaintiff's complaint that the accessibility of her property has been unreasonably interfered with. Access to her property before the improvement was had only by crossing one or the other of dangerous railroad crossings. The ramp and bridge entirely eliminated such situation and substituted therefor, at great public expense, a safe and convenient public highway for that purpose."

Plaintiff relies on Foust v. P. R. R. Co., 212 Pa. 213, but the situation presented in that case is not at all analogous to that now before us; there the new and substituted mode of access to the claimant's property was impracticable and unsafe. In Mellor v. Phila., 160 Pa. 614; In re Melon Street, 182 Pa. 397; Donnelly v. Pub. Ser. Com., 268 Pa. 345; Walsh v. Scranton, 23 Pa. Superior Ct. 276, and Ruscomb Street, 33 Pa. Superior Ct. 148, also relied upon by plaintiff, access in one direction was taken away without anything being substituted therefor. Robbins v. Scranton, 217 Pa. 577, which plaintiff cites as sustaining her contention that it was for the jury to determine whether her property suffered damage from the change in the mode of access, is likewise inapplicable. An examination of the case shows that question was not presented for our decision; moreover, although the property involved was used for business pur-

poses, we there indicated our belief that the plaintiffs had suffered no damages. We said: "In the present case, not an inch of ground was taken from plaintiffs, and there was no interference with the conduct of the business, except in so far as it was conjectured that some of the patrons upon the west side of the tracks might be deterred from driving to the mill, because they would have to use the viaduct which would carry them one square farther to the east, before turning to the mill, than when they were at liberty to risk the crossing at grade. It would seem to be a fair inference that this great public improvement by which the grade crossing was avoided would enure to the benefit of the patrons of the plaintiffs' mill, as much as to any other portion of the public; and would rather tend to draw business to the mill from the vicinity west of the tracks, than otherwise." On the facts of the instant case there can be no doubt that the accessibility of plaintiff's property was not injured by this improvement, and it would have been error for the court below to submit the question to the jury.

In support of her contention that the court below erred in holding as a matter of law that she was not entitled to damages for the diversion of traffic from in front of her property, plaintiff points out that before the crossings were vacated East Beaver Street was a part of the Lincoln Highway, one of the main arteries of traffic to and from Pittsburgh, with large numbers of vehicles passing in each direction, but that now none of that traffic uses the street. As a result, plaintiff claims, her property is not now suited for business use, and this, she contends, has diminished its value. This contention is untenable. The evidence discloses that plaintiff's property never has been devoted to business, but on the contrary has only been used for residential purposes; that she has in the past leased part of the house to tenants does not make its use any the less residential. The whole of East Beaver Street has always been residential in

character, and there is nothing to indicate that any property on the street was ever used for business. The facts in the instant case are not analogous to those of Hedrick v. Harrisburg, 278 Pa. 274, or of Bodemer v. Northampton Co., 101 Pa. Superior Ct. 492, which plaintiff cites as sustaining her claim. In the Hedrick case the property from which traffic was diverted was a hotel; in the Bodemer case, a hotel and gasoline station. In both instances, it will be observed, the property derived an important element of its value for the use to which it was put from its location along the stream of traffic. This is not true of plaintiff's property.

The judgment is affirmed.