Hindes, Exrx., Appellant, *v.* Allegheny County.

Argued April 24, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Benjamin L. Steinberg,* with him *M. J. Hindes,* for appellant.

*James A. Wright,* Assistant County Solicitor, with him *Charles Alvin Jones,* County Solicitor, for appellee.

OPINION BY CUNNINGHAM, J., September 30, 1936:

The controversy which occasioned this appeal had its origin in the building by the County of Allegheny, under its power of eminent domain, of the West End-North Side Bridge, having its northern terminus on Western Avenue, in the section of the City of Pittsburgh, commonly designated as the North Side. Viewers were duly appointed for the purpose of ascertaining the costs, damages and expenses resulting from the construction of this improvement.

Joseph Hindes, the decedent of the present substituted plaintiff, presented a claim for alleged damages to four adjoining three story brick tenement houses at Nos. 1333-5-7-9, Carsell Street. The viewers, in their report, disallowed the claim and an appeal was taken to the common pleas where an issue was framed. Pending the trial thereon, the plaintiff died and his executrix was substituted. There was evidence in behalf of the estate by one real estate expert that, in his opinion, the building of the bridge had so interfered with access to and egress from the houses that the market value of the property had depreciated from $12,000 to $10,000. For the county, two experts expressed the opinion

that the market value of the property had not been affected in any way.

In addition to its point for binding instructions, the county submitted one reading: "2. The injury suffered by the plaintiff, if any, is an injury common to the public at large, not special to himself and therefore not a legal basis for the present suit."

The learned trial judge, MOORE, J., refused both points; the jury returned a verdict in favor of the estate in the sum of $1,000.

Subsequently, the court granted the county's motion for judgment in its favor notwithstanding the verdict and this appeal followed.

The controlling question now involved is whether binding instructions should have been given for the defendant county. From the testimony and plan, forming a part of the record, we gather these material facts.

The property is located on the south side of Carsell Street, approximately 60 ft. from the southeast corner of the intersection of that street with Manhattan Street (one of the principal north and south streets in that section of the city) and is in a district described in the testimony as "a tenement district for dwelling purposes." Carsell Street is 15 ft. wide from curb to curb and 25 ft. between property lines. It intersects Manhattan Street, along the east side of the latter and approximately 125 ft. south of Western Avenue (a main east and west thoroughfare, 55 ft. in width) and 125 ft. north of Goebel Street, another east and west street, 50 ft. in width. Carsell Street does not cross Manhattan but extends eastwardly, between Western Avenue and Goebel Street, a distance of approximately 350 ft., to and across Fulton Street, the next north and south street east of Manhattan; Manhattan Street is 45 ft. in width and Fulton, 40. The Hindes property fronts 56 ft. 2½ in. on Carsell Street.

Originally it was a lot in a recorded plan, known as the Fleming Plan, which showed both Carsell and Manhattan Streets as opened streets on the plan.

No part of the improvement touches Carsell Street itself, but a portion of the ramp of the bridge is constructed on and across the section of Manhattan Street lying between the north side of Carsell Street and the south side of Western Avenue, with the result that the block of 125 ft. of Manhattan Street, between Carsell Street and Western Avenue has been vacated and closed, at least to vehicular traffic. There are several indefinite references in the testimony to steps provided for the use of pedestrians at this point, but, for present purposes, it may be assumed that the access to the property of the estate, which formerly existed in a southerly direction from Western Avenue over Manhattan Street to the mouth of Carsell Street, has been shut off.

One of the witnesses for the county gave the following accurate description of the effect of the improvement upon the easement which the Hindes property has in Manhattan and Carsell Streets: "Prior to the improvement, the Hindes property had an access both in an easterly and westerly direction. In the easterly direction, it ran into Fulton Street. The alley [Carsell Street] ran into Fulton Street, in an easterly direction, and into Manhattan Street, in a westerly direction and stopped. You could not proceed in a westerly direction beyond Manhattan Street. After the improvement, you could go in the direction of Fulton Street and also proceed in a westerly direction to Manhattan Street, as you did before. However, before the improvement, when you hit Manhattan Street, you could either turn right or left. Now, you can only turn to the left. If you wanted to reach any common point, any given point, on Western Avenue, prior to the improvement, you had to travel towards Manhattan Street and then turn on Manhattan Street one block to

Western Avenue. The only effect that this bridge has had, that is, to traffic, is that it requires a somewhat longer distance to reach the corner of Western Avenue and Manhattan Street." Expressed in feet, anyone desiring to reach the Carsell property from the corner of Western Avenue and Manhattan Street, or to go from the property to that corner, would, before the improvement, have been able to travel 125 ft. along the now vacated portion of Manhattan Street, and 60 ft. on Carsell, but would now be obliged to travel about 350 ft. east on Western Avenue, 125 ft. south on Fulton, and then approximately 250 ft. west on Carsell, or about 500 ft. farther, by reason of present conditions.

Reedsdale Street is the next east and west main thoroughfare south of Western Avenue; it is 60 ft. in width and carries the tracks of the Pittsburgh Rys. Company. Access from the property south to Reedsdale Street and the system of streets in that direction, as well as to the system of streets to the east and west of the property, has not been affected.

We therefore here have the case of a property owner whose property does not abut upon the line of the improvement and may, therefore, be considered as property merely adjacent to the ramp of the bridge as constructed.

As said in *O'Donnell v. Pittsburgh*, 234 Pa. 401, 83 A. 314, at page 410: "If there is anything settled by judicial decision in this state, it is that a sale of lots according to a plan which shows them to be on a street implies a grant, or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of it to public use; and that the owner of any lot in the general plan may assert the public character of any street and the right of the public to use it."

The O'Donnell case is strongly relied upon by appellant, but it is important to note that, as expressly

stated in the opinion of the Supreme Court, that case did not involve the question of the right of municipalities to vacate streets laid out on a plan of lots and dedicated to public use. The decree as entered merely restrained another private property owner in the plan from procuring the closing or obstruction of a street shown thereon.

*Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad Co.*, 240 Pa. 519, 87 A. 968, is a case in which the effect of the taking, under the power of eminent domain, of the easement of owners of lots in streets shown upon a recorded plan was considered. The second paragraph of the syllabus of that case reads:

"The easement owned over such streets and alleys by the owners of lots is a property interest, which may be the subject of a taking under the power of eminent domain. A railroad company, therefore, possessing the right of eminent domain, may after proper formalities, occupy such streets and alleys, although in so doing it must give or secure compensation to lot owners for the easement of which they are thus deprived." But it is also stated at p. 527 that the damages must be real and substantial, not speculative, fanciful and remote, and must be proved by positive testimony.

It is not the law that a property owner may not recover damages for an injury to his property caused by the construction, enlargement or improvement of public works merely because no part of his property has actually been taken or destroyed or because his property does not abut upon the line of the improvement. The circumstances under which an adjacent—as distinguished from an abutting—property owner may recover damages were considered by our present President Judge, KELLER, in *Holmes & Holmes v. Pub. Ser. Com.* (No. 2), 79 Pa. Superior Ct. 381, 387. An illustration there given of one type of cases in which an adjacent property owner may recover damages is

where the vacation of a street, or a part of a street, results in leaving his property in a cul-de-sac, and consequently with but one mode of access to the general system of streets in the vicinity, whereas before the vacation there were two. On the other hand, it is there pointed out that this rule does not apply to adjacent property owners where there is an intersecting street between the property and the street vacated and the effect of the vacation is not to cut off access to the general system of streets from any direction but only make it necessary to travel a short distance farther to reach them. (See also *Hedrick v. Harrisburg,* 278 Pa. 274, 279, 122 A. 281.)

*Ruscomb Street,* 30 Pa. Superior Ct. 476, and 33 Pa. Superior Ct. 148, and *Edgemont Street,* 66 Pa. Superior Ct. 142, are examples of the last mentioned class of cases.

The real question here is whether it has been shown that the owner's "easement" or right of reasonable access to the property has been so substantially and specially impaired that its market value has been injuriously affected. Damages cannot be recovered for every slight inconvenience of the same kind and degree as that suffered by all persons in the vicinity who have occasion to use the street: *Spang & Co. v. Commonwealth,* 281 Pa. 414, 126 A. 781.

Upon a careful reading of the testimony and examination of the draft, we believe the following language from the opinion of our former President Judge, PORTER, in the case of *Edgemont Street,* supra, at page 144, is applicable here:

"This is clearly a case where the effect of the vacation of a part of a street is not to cut off access to the lots from any direction, but merely to make it necessary, when going in one direction, to travel a short distance farther in order to reach the system of streets in that direction." It follows that binding in-

structions should have been given for the defendant county and therefore the judgment in its favor upon the whole record was properly entered.

Judgment affirmed.