# Pittsburgh, Bradford and Buffalo Railway Company *versus* McCloskey.

1. The true measure of damages for the taking of land for the construction of a railroad is the difference between the market value of the property unaffected by the obstruction, and its market value afterwards.

2. In arriving at the difference, however, the jury are entitled to consider such advantages alone as are special to this particular property and only such disadvantages as are actual.

3. Damages that may be sustained from the negligent or unskilful management of the road cannot be taken into consideration. Hence, it was error to allow a witness to state his experience as to his own property from which the jury might anticipate the extent of the prospective injuries to the plaintiff.

4. The railroad company cannot be charged an excessive rate for timber on the land taken, on the ground that there was not more than was reasonably required for fencing and fire-wood.

5. The cost of fencing cannot be recovered as a distinct item of damages, but the question of how much the burden of fencing will detract from the value of the land may be considered by the jury.

October 6th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Clarion county:* Of October and November Term 1885, No. 20.

This was, in the court below, an appeal by Robert McCloskey from an award of viewers appointed to assess damages for the taking of a portion of his property for the construction of the

road of the Pittsburgh, Bradford and Buffalo Railway Company. The viewers awarded him $180 damages.

On the trial, before NEALE, P. J., of the thirty-third judicial district, the following facts appeared: McCloskey was the owner of a farm of about one hundred acres in the northern part of Clarion county, through the northwestern corner of which the line of the defendant company ran, taking about two acres of ground, part of which was cultivated and part timbered.

William Gilfillan, a witness on behalf of the plaintiff, was interrogated as follows: Q. "I want you to state, from your experience, if you have ever had any experience, what the effect of a railroad across a farm is as to the danger of fire and danger to stock—inconvenience of that kind?" Objected to by defendant as incompetent. Objection overruled. Exception. (First assignment of error.) A. "My experience is, that if my family, one of them, was dying to-morrow, we daren't all leave home; yesterday it was on fire after I left there; there is never a week scarcely but I am on fire."

Q. "You are living on the same road?"

A. "On the same road."

J. C. Emminger, another witness for plaintiff, was asked:

Q. "State, Mr. Emminger, what proportion of timber Mr. McCloskey had, as compared with what a farm of that kind would require, whether more or less?" Objected to by defendant as incompetent. Objection overruled. (Second assignment of error.)

A. "In my own judgment I should think there was not any more than was necessary for a farm of that size to supply fencing occasionally, fuel and something of that kind, and repair buildings; I don't think there is any more on that farm than was necessary." This same witness was further interrogated as follows: Q. "What effect, in your judgment, has the railroad constructed across this land had upon the market value of the land?" A. "I do not know that it has had any effect, as far as my experience goes, in particular." Q. "In what way?" A. "From the fact that I do not know of any land being bought or sold immediately before or since the construction of the railroad." Q. "What I want to get at is this: From your knowledge of the land, and your judgment of the effect of the railroad on it, I want you to state whether it has or has not enhanced or depreciated the value of that farm." Objected to by defendant for the reason that "the witness has already stated that he had no knowledge of the effect of the road upon the market value of the property." Objection overruled. Exception. (Third assignment of error.) Q. "I want your estimate now, Mr. Emminger, as near

as you can judge, how the market value of that land has been affected one way or the other; what difference has the railroad made on it, in your judgment, if any?" A. "I would think it would depreciate the value of that farm, of that particular farm, by destroying the timber that would be held necessary for the use of the farm, and also for the occupying of the land."

Edward McLaughlin, also a witness for plaintiff, testified as follows: Q. "State from your experience what the danger, if any, would be from fire being communicated to fences, timber and crops in the vicinity of this road, as affecting the market value of the land?" Objected to by defendant as incompetent and irrelevant. Objection overruled and question allowed. (Fourth assignment of error.) A. "The fire has run over my piece and burned some fences last spring, not even the fence along the road, but the fences away from the road."

By the Court: Q. "But as affecting this piece of land—taking this land the way it is, what would be the effect as to the market value—what difference would it make?" A. "It would not take a very large fire to kill some timber in the woods, or to burn hay or grain there." Q. "State from your experience what the danger, if any, would be from fire being communicated to fences, timber and crops in the vicinity of this road?" A. "I could not answer without knowing how much damage it would do." Q. "I am not asking the amount of damage; I am asking from your experience what you know about the danger there that would affect the market value of the land." A. "It would certainly affect it if the fire would burn it." Q. "My question is, how does the danger of fire affect the market value of that land? Does it improve it, or depreciate it?" A. "It would depreciate it."

Plaintiff requested the court to charge, *inter alia*, as follows: "In estimating benefits to be set off against damages, the jury should allow only for special advantages, if any, peculiar to this farm, caused by the construction of the road; and should not allow for any benefits which this property may share in common with all others in the neighborhood resulting from the road." *Answer:* "This point is affirmed." (Seventh assignment of error.)

The defendant requested the court to charge, *inter alia*, as follows: 2 "That if the advantages accruing to the land of the plaintiff from the construction of the railroad equal or exceed the disadvantages, the verdict of the jury should be for the defendant." *Answer:* "That is affirmed, as we have explained to you that these advantages should be peculiar and applicable to this particular tract of land." (Eighth assignment of error.)

7. " The jury, in estimating the advantages, should consider any and everything connected with the general improvement resulting from the construction of the whole road which tend to increase the value or usefulness of plaintiff's property, taking into consideration the whole road, and not merely that part on plaintiff's property." *Answer:* " This point is affirmed, with the qualification that the advantages of the road to be considered are such as peculiarly affect the plaintiff's land." (Ninth assignment of error.)

The court charged the jury, *inter alia,* as follows:—"We would say to you, to be a little more definite upon that subject, that there appears to have been ninety-five perches of ground taken by this railway company, that is, in length; the width varies from three to five perches. The entire length, possibly, would be required to be fenced, and estimating the fencing at nearly the highest estimate put upon it by the witnesses, would make it worth some two hundred and thirty-seven dollars and fifty cents, as we figure it. You, of course, will not be bound by any amount that we suggest; but at a dollar and a quarter a rod the fence would cost two hundred and thirty-seven dollars and fifty cents.

" Then there would be about two acres of land appropriated by the company, and the plaintiff would be entitled to be paid for that, unless he was compensated otherwise by the advantage of the railroad passing over and through that land.

" The value of the land has been estimated variously, from twenty dollars to as high as sixty-five dollars an acre. It will be for you to determine how much the actual value of it is, under all of the evidence. If estimated at the rate of sixty dollars an acre, it would amount to one hundred and twenty dollars, and would make, altogether, the actual damages, simply by the appropriation of the land and the building of the fences, three hundred and fifty-seven dollars. We would make that as the actual damage sustained by the plaintiff, leaving out any question of the cutting up of his fields, in passing through, the obstruction of his roads over and through his farm, and any special mutilation or deterioration that there might be in that farm, by reason of the railroad going diagonally through it instead of going in a straight course. That will be another matter for you to consider as an element of damages.

" Then, under these facts, gentlemen, as you have been instructed from the evidence, or, at least, as you have been informed by the evidence that is before you, you will determine whatever the damages are. It is not for the court to suggest any special amount. We cannot, or it is not for the

[Railway Co. *v.* McCloskey.]

court to say, that the plaintiff has actually received or sustained any damage.

"On the part of the defendant it has been shown you that the plaintiff did not sustain damages—at least that the damages did not exceed the amount of benefits derived—that is, by some of the witnesses. Other witnesses on the part of the defendant have gone this far, and said that the only damage the plaintiff would be entitled to would be the value of the land taken and the amount that would be required to fence it. That is the evidence on the part of the defendant.

"On the part of the plaintiff they have shown you that the land is so seriously damaged that the deterioration would amount to a third or a fourth of its actual value. Those witnesses, in estimating the actual value of the land, have placed it as high as sixty-five hundred dollars, and as low as four thousand dollars; and one of the plaintiff's witnesses said that eight hundred dollars would compensate, if in addition to the eight hundred dollars the value of the fencing and of the ground taken would be allowed. The value of the fencing we have fixed, as we have stated—taking it at one dollar and a quarter a rod—at two hundred and thirty-seven dollars and a half, and the ground, one hundred and twenty dollars, would be three hundred and fifty-seven dollars; that, added to the eight hundred dollars, would make something like between eleven and twelve hundred dollars, according to that witness, who was a witness on the part of the plaintiff.

"Other witnesses have placed the amount of damages that the plaintiff would be entitled to at a larger sum than that."

Verdict for plaintiff for $1.059,12 and judgment thereon. Defendant thereupon took this writ, assigning for error the admission of the evidence as above set out, the answers to the points and the charge of the court.

*James T. Maffett* (*W. H. Ross* with him), for plaintiff in error.—The testimony of Gilfillan and McLaughlin was improperly admitted: Sunbury & Erie R. R. Co. *v.* Hummell, 3 Casey, 99; Railroad *v.* Lazarus, 4 Id., 203; Railroad *v.* Stauffer, 10 P. F. S., 374. Of course, the specific elements on which a just decision is arrived at may be given in evidence, as ruled in Gearhart *v.* R. R., 32 P. F. Smith, 260; but they should be the elements of the direct and necessary consequences of the construction—not of "fancy, caprice or folly" —nor the sheer imagination or guessing of prejudice and ignorance. According to the evidence, there were twenty-eight or thirty acres of timber land on this place of one hundred acres. Whether that was too much or too little mattered not. But it was injected into the case as an additional aggravation.

[Railway Co. *v.* McCloskey]

Evidence which ought not to influence the jury should be excluded from their consideration: Kendall *v.* Lee, 2 P. & W., 482. A jury should not have a pretext for disregarding the law: Ibid; Weidler *v.* Farmers' Bank, 11 S. & R., 134; Erie Railway Co. *v.* Decker, 78 Pa. St. R., 293. When a witness has testified to a want of knowledge of the market value of the land in dispute, he should not be permitted to testify as to his opinion of the value of the same: Carmalt *v.* Post, 8 Watts, 406; Rouch *v.* Zehring, 9 P. F. S., 74.

The instruction of the court as to the cost of fencing was misleading, and the allowance of the same as a distinct element of damages was clear error: Railroad *v.* Burson, 11 P. F. S., 369; Montour R. R. *v.* Scott, 11 W. N. C., 51.

Although the fourth point of the plaintiff below, which excluded all benefits that "this property may share in common with others," seems to be in accordance with the case of Hornstein *v.* At. & G. W. R. R. Co., 1 P. F. S., 87, it is in conflict with the later case of Philadelphia *v.* Linnard, 1 Out., 247.

*B. J. Reid (A. B. Reid* with him), for defendant in error. —If anything is settled by the authorities, it is that the true measure of damages for appropriation of land by a railroad is the depreciation in the market value of the property as a whole, as affected by the road. The rule would be a mockery and a delusion unless that depreciation may be shown, by whatever cause produced. Whether the constant danger of fire exists or not, and whether or not it makes the property unsalable, and to what extent, are questions of fact for the jury, and not of law for the court.

Persons from the neighborhood are presumed to have sufficient knowledge of the market value of the lands: Pa. & N. Y. R. R. Co. *v.* Bunnell, 31 P. F. S., 414.

Prior to Railroad Co. *v.* Burson, 61 P. S. R., 369, the cost of necessary additional fences was invariably held a proper item of damage whenever the question came up; and it was only by a blunder of the reporter that a different rule appears in the syllabus of that case. See Plank Road Co. *v.* Ramage, 8 Har., 95; Railroad *v.* Hummell, 3 Casey, 99; Watson *v.* Railroad Co., 1 Wright, 476; Railroad *v.* Stauffer, 10 P. F. S., 377. In the case of Montour R. R. *v.* Scott, 11 W. N. C., 51, the court adopts the syllabus of the Burson case, but the facts of that case were radically different from this one. Only such advantages as are peculiar to the property in question can be considered by the jury: Hornstein *v.* Railroad Co., 1 P. F. Smith, 87; Railroad Co. *v.* Robinson, 14 Norris, 430.

Mr. Justice CLARK delivered the opinion of the court November 9th, 1885.

[Railway Co. *v.* McCloskey.]

In estimating the damages to a land-owner, caused by the construction of a railroad, the rule as to the measure of damages, declared by Judge GIBSON in the Schuylkill Navigation Company *v.* Thoburn, 7 S. & R., 411, has ever since been recognized and followed:—" The jurors are to consider the matter just as if they were called on to value the injury, at the moment when compensation could first be demanded; they are to value the injury to the property, without reference to the person of the owner, or the actual state of his business, and, in doing that, the only safe rule is to inquire what would the property, unaffected by the obstruction, have sold for at the time the injury was committed. What would it have sold for, as affected by the injury? The difference is the true measure of compensation." The adjustment of this difference involves, in all cases, a fair and just comparison of the advantages and disadvantages resulting from the opening and operation of the road, and the construction of its works; but the advantages to be considered are such only as are special, and the disadvantages such as are actual. The general appreciation of property in the neighborhood, consequent to the projected construction of the road, cannot enter into the calculation; to this the landowner whose lands have been taken is as fairly entitled as is his neighbor, whose possession and enjoyment have not been disturbed. The general increase of values, resulting from the growth of public improvements, railroads, canals and highways, accrues to the public benefit, and in the computation of damages, the landowner cannot be charged therewith. The question, in each case, is whether or not the special facilities afforded by the improvement have advanced the market value of the property, beyond the mere general appreciation of property in the neighborhood: Pittsburgh & Lake Erie Co. *v.* Robinson, 14 Norris, 426.

So, also, on the other hand the disadvantages must be actual, not speculative; they must be such as substantially affect the present market value of the land. As we said in Hornstein *v.* Atlantic &. G. W. Railroad Co., 1 P. F. S., 90, " it is the business of the viewers, in the first instance, and on appeal, of the jury, to balance the advantages that are special, against the disadvantages that are actual, and with the aid of whatever testimony is laid before them, to find out, as well as they can, how much less the land would fetch in market by reason of the road; and that sum, which will represent what has really been taken away from the owner, should be given back in damages." Merely speculative damages cannot be allowed. The inconvenience, arising from a division of the property, or from increased difficulty of access, the burden of increased fencing, the ordinary danger from accidental fires to the fences,

[Railway Co. *v.* McCloskey.]

fields or farm buildings, not resulting from negligence, and generally all such matters as, owing to the particular location of the road, may affect the convenient use and future enjoyment of the property are proper matters for consideration; but they are to be considered in comparison with the advantages, only as they affect the market value of the land. The jury cannot include in the verdict a fund to cover the costs of fencing, or to provide an indemnity against losses by fire, or casualties to the cattle and stock upon the farm. Such an assessment must necessarily be purely speculative, as the matters thus sought to be provided against, are in their nature altogether ideal and fanciful. A re-arrangement of the farm may obviate the necessity for any increased fencing; its future occupancy may be such as to require none; casualties, by fire or otherwise, may never occur, and therefore the injury from these causes can only be computed, as they affect the market value of the land. For damages, occasioned by negligent or unskilful management of the road, the company is not liable in this form of proceeding, and there is no remedy in any form for merely accidental injuries, especially for accidents which are only anticipated and may never occur. The introduction of steam and electricity into the various pursuits and industries of the people, doubtless increases the risks of individual injuries, but, as was said in Railroad *v.* Hummell, 27 Pa. St., 99: —"It is a simple law of nature that he who lives in society must take the risk of those social accidents which society knows not how to prevent; the incidental hazard must stand as balanced by the incidental benefit of the social state." The estimate of a merely prospective injury can be founded in no rational or correct legal principle, and cannot therefore be allowed. If injuries, such as are anticipated, occur through the negligent conduct of the defendants, they may be afterwards redressed in another form of action; if they occur by accidental means, they must be borne without complaint. The theory of the charge of the learned judge to the jury, as to the rules of law governing the assessment, is therefore in the main correct, and the seventh, eighth and ninth assignments of error cannot be sustained.

In the practical application of these principles, however, in the determination of questions raised at the trial, upon the admissibility of certain portions of the evidence, and in illustration to the jury of the method by which the damages were to be computed, we think the learned judge erred.

The testimony of William Gilfillan was clearly inadmissible, and was, without doubt, damaging to the defendant's case; his testimony was as follows:—

Q. I want you to state, from your experience, if you have

had any experience, what the effect of a railroad across a farm is, as to the danger of fire, and danger to stock—inconvenience of that kind. Give us your experience about that if you have had experience. A. My experience is, that if my family, one of them was dying to-morrow, we daren't all leave home; yesterday it was on fire after I left there; there is never a week scarcely but I am on fire.

Q. You are living on the same road? A. On the same road.

This was clearly incompetent; it had no possible connection with the case under consideration; and the tendency of such an extraordinary statement undoubtedly was to swell the damages to an excessive sum. It was a matter of no consequence whatever, what the experience of this witness was, as to fires occurring on his own farm. Whether from any cause fires were more likely to occur there, whether the fires that did occur were the result of negligence or not, whether, indeed, his statements were true or not, were collateral issues which could not be tried in this case.

The testimony of Edward McLaughlin is almost equally objectionable; it is as follows:

Q. State from your experience what the danger, if any, would be from fire being communicated to fences, timber and crops, in the vicinity of the road, as affecting the market value of the land. A. The fire has run over my place and burned some fences last spring; not even the fences along the road, but the fences away from the road.

Q. By the court: But as affecting this piece of land, the way it is, what would be the effect as to the market value, what difference would it make? A. It would not take a very large fire to kill some timber in the woods, or to burn hay or grain there.

Q. State from your experience what the danger, if any, would be from fire being communicated to fences, timber and crops, in the vicinity of this road. A. I could not answer, without knowing how much damage it would do.

Q. I am not asking the amount of damages; I am asking, from your experience, what you know about the danger there, that would affect the value of the land. A. It would certainly affect it if the fire would burn it.

Q. My question is, how does the danger of fire affect the market value of the land? Does it improve it, or depreciate it? A. It would depreciate it.

The form of examination here pursued was well calculated to elicit the answers given. The question was as to the market value of the land, and in fixing that, the ordinary danger from fires, for which there was no redress against the company, was

[Railway Co. v. McCloskey.]

with the other disadvantages a proper subject of consideration; but it was incompetent for the witness to state his experience as to his own property to furnish data, from which the jury might anticipate the extent of the prospective injuries of the plaintiff.

Nor do we regard that portion of the evidence of J. C. Emminger, set forth in the second assignment, as material to the issue.   Whether there was much or little timber land embraced in the plaintiff's lines was totally irrelevant.   The question was as to the value of the land taken, with the timber upon it, and it makes no difference whatever whether the timber land was proportionate or disproportionate to the cleared land; the value of the land with the timber upon it was the test in any event. The company could not be charged at a fanciful or excessive rate for the timber because there was not more than was reasonably required for fire-wood and fencing on the farm.   It was clear also that the witness knew nothing as to the market value of the land; he said that he did not, and it was improper to extort from him the expression of a mere opinion on the subject.

The cost of fencing, as we have already said, cannot be recovered as a distinct item of damages, but the question how much the burden of fencing will detract from the value of the land, may be considered by the jury: Del., Lack. & W. R. R. Co. v. Burson, 11 P. F. S., 369; Montour Railroad Co. v. Scott, 11 W. N. C., 51.   We think the charge of the court is fairly open to the criticism that it is misleading on this question.   The computation made by the learned judge, by way of illustrating the method to be pursued by the jury, it will be readily observed, was not in conformity with the principles settled by the cases adjudged in this court, and repeated in this opinion.

It was urged in the argument that the court instructed the jury to disregard the evidence of damages of a merely speculative character, but this was not done until after the argument of counsel was concluded and that was too late.

The judgment is reversed and a *venire facias de novo* awarded.