Harvey Henry, Appellant, *v.* County of Somerset.

Argued April 13, 1932.

442 

 Before TREXLER,
P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE,
STADTFELD and PARKER, JJ. 

*John A. Berkey,* for appellant.

*Charles F. Uhl,* and with him *Charles H. Ealy* of
*Uhl & Ealy* and *F. J. Kooser, E. O. Kooser* and *James
O. Courtney,* for appellee.

OPINION BY PARKER, J., July 14, 1932:

In the improvement of State Highway Route No.
50, it was deemed advisable by the State Highway
Department to change the course of the road across
the lands of plaintiff for a distance of 1300 feet and
an appropriation was made on August 22, 1929 of 1.9
acres of plaintiff's farm. The County of Somerset,
being liable for the damages, if any, occasioned by such
change, made an effort to agree with the plaintiff
upon the amount to which he was entitled, but was
unable so to do. Viewers were appointed to assess
the damages and after an award an appeal was taken
by the plaintiff from the amount fixed. The ques-
tions involved concern the admission of testimony and
the charge of the court on the trial of the issue.

The first three exceptions complain of the rulings
of the court on the admission of testimony and involve

the same question. Witnesses for plaintiff, having testified to the amount of damages to which the plaintiff was entitled, were interrogated on cross examination as to what advantages to the plaintiff had been considered by the witnesses in arriving at the amount they had each fixed. They were asked about adjoining properties through which the road did not pass. The substance of the inquiries consisted in directing the attention of the witnesses to farms adjoining that of the plaintiff and inquiring whether there was not a special benefit to the plaintiff which was not shared by his neighbors. The evident purpose of this line of cross examination was to ascertain whether the witnesses had given consideration to any special advantages that might have accrued to the plaintiff. We not only have no doubt about the propriety of this cross examination, but believe counsel for the defendant would have been derelict in his duty if he had not carefully examined these witnesses as to the basis of their respective conclusions. It is a matter of common experience that in proceedings to assess damages the opinions of experts or others called to testify to values vary over a considerable latitude and it is proper that such witnesses should be cross examined for the purpose of determining their credibility and detecting any bias that may be present. If this course were not pursued, the jury might fall into the objectionable, but not uncommon, method of arriving at a verdict by striking an average. In passing upon plaintiff's objections, the trial court pointed out that the advantages to be considered in assessing damages were only such as were special or peculiar to the property under consideration and in the charge properly instructed the jury in this respect. "The advantages of the road are to be considered as well as the disadvantages and surely it will not be said that the additional value given to land is not an ad-

vantage." Plank-Road Co. v. Rea, 20 Pa. 97. "The advantages to be considered are such only as are special, and the disadvantages such as are actual. The general appreciation of property in the neighborhood, consequent to the projected construction of the road cannot enter into the calculation; to this the landowner whose lands have been taken is as fairly entitled as is his neighbor, whose possession and enjoyment have not been disturbed...... The question, in each case, is whether or not the special facilities afforded by the improvements have advanced the market value of the property, beyond the mere general appreciation of property in the neighborhood:" P. B. & B. R. Co. v. McCloskey, 110 Pa. 436, 442. Counsel contends that reference to particular properties tended to involve collateral issues. Very frequently in the trial of these cases involving damages for property taken under the right of eminent domain, it is proper to limit the scope of cross examination, but this is a matter peculiarly within the discretion of the trial court. The very question raised by these assignments was considered in the case of Pittsburgh etc. R. Co. v. Vance, 115 Pa. 325. We find no merit in these assignments.

Jefferson King, having testified to the amount of damages, said that he was tax assessor for the township where the land was located and identified his assessment book for the year 1929. The witness fixed the market value of the property before and after the taking at $11,500 and $8,000 respectively. The assessment of the entire 173 acres was $2,900. The record having been offered in evidence, the ruling of the court was as follows: "The offer is received in evidence simply to affect the credibility of the witness, S. J. King, and for no other purpose." This evidence was properly admitted. In the case of Krider v. Phila., 180 Pa. 78, this question was considered and

the admission of such testimony approved in a per curiam opinion. The syllabus of the case, which accurately summarizes the ruling of the Supreme Court, is as follows: "On the trial of an appeal from a road jury in proceedings to open a street, where a tax assessor has testified on behalf of a landowner he may be asked on cross examination, for the purpose of testing his credibility, at what amount he had assessed the land for tax purposes." It is argued that the 1929 assessment was not a triennial assessment and would reflect the value for a different year. The witness had been assessor of the township for sixteen or eighteen years and testified that the value was that fixed by him for tax purposes in 1927 and carried forward each year. He stated that lands in his township. were assessed at fifty per cent of the market value under the instructions of the county commissioners and the witness was given full opportunity to justify the difference between the price at which the land was assessed and the valuation fixed by him. He had placed the damages for the taking of 1.9 acres for a public road at a higher amount than that at which he had assessed the entire 173 acres with improvements for the years 1927 to 1929. If there had been a marked appreciation in values in the interim, the plaintiff should have shown the facts. To have excluded this testimony would have been reversible error. Dawson v. Pittsburgh, 159 Pa. 317.

The sixth assignment of error complains of an instruction in the charge of the court which is as follows: "They testified that in their opinion the fair market value of that farm was just as much after the road was constructed as it was before. They admitted, however, that in their opinion, although the farm is worth just as much now as it was before, this plaintiff ought to be compensated for the land actually taken, which is one and nine-tenths acres; and that he ought

to be compensated for the cost of erecting a fence along this improved highway, and you have heard evidence both as to the value of the land and the cost of erecting the fence. Now that is somewhat outside the rule of measure of damages, but we will allow you to consider this and see where it ends;'' Certain of defendant's witnesses had testified that there was no damage to plaintiff's property, but qualified their answers by saying that the plaintiff should have some allowance for certain items. This is illustrated by the following questions and answers: ''A. Well, it would sell for just as much money as it would have before, in my opinion. Q. You feel he has suffered no damage by reason of the taking of his land and the building of the highway over it? A. Well no, not exactly; he hasn't suffered any damages, but there is property taken from the man, real estate, and he should be compensated for that real estate which is taken from him; I think he should have a fair and reasonable price for the land which was taken from him. Q. But you still believe it would bring as much money? A. I think it would bring as much money on the market.'' The complaint is to the charge of the court and not to the admission of the evidence. The court correctly instructed the jury as to the true measure of damages and in commenting on the evidence called the attention of the jury to the fact that certain witnesses for defendant had testified that there was not any damage caused by the taking of the land, but that these witnesses had expressed the opinion that plaintiff should be allowed the value of the acres taken and the cost of constructing a fence. This was an instruction favorable to the plaintiff and it was proper that the jury should take these statements into account in determining the weight to be given such evidence.

The seventh to tenth assignments of error, inclu-

sive, are predicated upon the contention that there was not any proof of special advantages to the property in question and that notwithstanding this fact, the court in effect said that while he did not recall any testimony of special or peculiar advantages, it was for the jury to recall the testimony and determine whether any such had been proven. It is sufficient answer to this complaint to call attention to the fact that the witnesses were interrogated on the subject of special benefits. These witnesses admitted benefits but for the most part denied that there were any special or peculiar benefits to the plaintiff's property. It was for the jury to draw the inferences of fact and not for the court, and the court very properly submitted to the jury for their determination the question whether any special advantages had been shown.

In a consideration of the first five assignments of error, we have not overlooked the Act of April 21, 1915, P. L. 159, section 1, which relates to evidence receivable in proceedings arising from the exercise of the right of eminent domain, and section 2 which specifically provides that in claims for damages against a county, city, borough or township, it shall be competent for the party or parties claiming damages to offer in evidence as declaration against interest the value of the property affected as assessed for the purpose of taxation, and the "General County Law" (1929, May 2, P. L. 178, sec. 527 and 528). The Act of 1915 appears to be repealed as to townships by Act of July 14, 1917, P. L. 840, and in sofar as it relates to boroughs by Act of May 4, 1927, P. L. 519. These partial repeals raise an interesting question but we do not deem it necessary at this time to pass upon that question. See Greenfield v. Philadelphia, 282 Pa. 344, 356.

The judgment is affirmed.