170 So.2d 846 (1964)
Harold K. DANIELS and Ruth K. Daniels, husband and wife, Appellants,
v.
STATE ROAD DEPARTMENT of Florida, an agency of the State of Florida, and Sarasota County, a political subdivision of the State of Florida, Appellees.
No. 32664.
Supreme Court of Florida.
September 30, 1964.
Rehearing Denied November 6, 1964.
*847 Clyde H. Wilson, Sarasota, for appellants.
Bryan W. Henry and P.A. Pacyna, Tallahassee, for State Road Dept. of Florida; Wm. S. Boylston, Sarasota, for Sarasota County, appellees.
ROBERTS, Justice.
In this direct appeal from a judgment entered in eminent domain proceedings, the questions of (1) the applicability of Section 29 of Article XVI, Florida Constitution, F.S.A., to condemnation proceedings instituted by a state agency or political subdivision to acquire property for a purely public purpose, and (2) the validity of Section 73.10(3), Florida Statutes, F.S.A., are squarely presented. Accordingly, we have jurisdiction of the appeal under Section 4, Article 5 of our Constitution.
Section 29 of Article XVI reads as follows:
"No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money; which compensation, *848 irrespective of any benefit from any improvement proposed by such corporation or individual, shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law."
And the statute the validity of which was upheld in the lower court, Section 73.10(3), supra, provides that
"When the suit is by the state road department, county, municipality, board, district or other public body for the condemnation of a road right-of-way, the enhancement, if any, in value of the remaining adjoining property of the defendant property owner by reason of the construction or improvement made or contemplated by the petitioner, shall be offset against the damage, if any, resulting to such remaining adjoining property of the defendant owner by reason of the construction or improvement, but such enhancement in value shall not be offset against the value of the property appropriated, and if such enhancement in value shall exceed the damage, if any, to the remaining adjoining property there shall be no recovery over against such property owner for such excess."
It is contended here by appellants, who are the owners-condemnees of the subject property, that Section 29 of Article XVI, supra, is applicable to the condemnation proceedings instituted by the appellees, who are the State Road Department of Florida and the County of Sarasota, to acquire appellants' property; that such constitutional provision "permits the landowner to receive remainder damages without diminution from the benefit of any improvement proposed;" that Section 73.10(3), supra, authorizing the setoff of "enhancement in value" against remainder damages is repugnant to such constitutional provision; and that it was, therefore, reversible error on the part of the trial judge to admit evidence of the increase in the value of the remainder of appellants' tract of land resulting from the construction of the highway through such tract.
The appellees concede that statements in some of the opinions of this court appear to support appellants' contention as to the applicability of Section 29 of Article XVI, supra, to eminent domain proceedings instituted by agencies or political subdivisions of the state, as well as to those instituted by private corporations or individuals. They point out, however, that this question has never been squarely presented to this court, so that the statements relied upon are obiter dicta; and they strongly urge that an examination of the Journal of the proceedings of the Constitutional Convention of 1885 at which Section 29 of Article XVI was first adopted, reveals clearly that it was intended to apply only to private corporations and individuals and not the State, its agencies and political subdivisions. We agree for the reasons stated hereafter.
It should first be remembered that the superior dominion  the "eminent domain"  which the State holds over all the soil within its bounds is, like the police power, an inherent attribute of sovereignty to be exercised in case of public exigency or for the public good. It may be limited by the Constitution, but it is not created by the organic law of the State. "It is an attribute of sovereignty which the state would have even [though] there were no constitutional grant of the power." Spafford v. Brevard County (1926), 92 Fla. 617, 110 So. 451, 458. It could, apparently, be exercised without the payment of any compensation whatsoever to the owner of the land taken, in the absence of a constitutional inhibition, see Smith v. City of Greenville (1956), 229 S.C. 252, 92 S.E.2d 639; and, indeed, it seems that in the early days in some states it was common practice to lay out highways without compensation to the owner of the land  either by virtue of rights reserved in the grant of public lands or by a long-established practice based on the slight value of the land and the general *849 need for roads. See the comment by the annotator in 68 A.L.R. at page 784.
It was, however, so much a matter of natural justice that private property should not be taken for public use without compensation that in almost all of the states a provision specifically forbidding the taking of private property for public use without just compensation was included as a part of their organic law. Such a provision is, of course, a part of the so-called Bill of Rights of the federal constitution, having been included as a part of the Fifth Amendment thereto; and it has been a part of Florida's organic law since 1838. It was included in all of the Constitutions of this State and was incorporated  apparently as a matter of course  as Section 12 of the Declaration of Rights of the Constitution of 1885, F.S.A., which, with amendments, is our present constitution. Having provided in the traditional manner, in Section 12, that private property shall not be taken "without just compensation," it seems clear that in adopting an additional section relating to the exercise of the right of eminent domain the framers of the Constitution of 1885 intended to specify additional organic limitations upon the exercise of this sovereign right by "any corporation or individual." We so stated in State Plant Board v. Smith, Fla. 1959, 110 So.2d 401, 405.
This brings us, then, to the first question presented here: Did the framers of the Constitution of 1885 intend that a state agency or political subdivision of the state should be subject to the additional limitations prescribed by Section 29 of Article XVI? Many state agencies, although purely public bodies, are or have been in the past designated as a "body corporate" by statute and given many of the attributes of a private corporation, such as the right to sue and to be sued. The State Road Department, one of the appellees here, was formerly such a statutory corporate entity. Yet it cannot be doubted that such a state agency retains its essential character as an arm of the state; and we think it is equally clear that the members of the Constitutional Convention of 1885 had in mind private corporations only, and not a public body, in adopting Section 29 of Article XVI.
We reach this conclusion, first, from an examination of the Journal of the Constitutional Convention of 1885. It there appears that the constitutional provision in question came out of the Committee on Private Corporations as a minority report (see pp. 296-298 of the Journal) in form almost identical to that in which it was finally adopted (with only the words "or individual" omitted) and was tabled. It was then offered by the Committee on Miscellaneous Provisions, with the words "or individual" now included (see pp. 488-489 of the Journal), and was adopted. It was placed by the Committee on Style and Arrangement of the Constitution of 1885 with other constitutional provisions relating specifically to private corporations and individuals. See Sections 28, 30 and 31 of Article XVI. Thus, the background against which it was adopted indicates, almost conclusively, that it was intended to apply only to private corporations (and individuals) to whom the Legislature might delegate the power of eminent domain in a proper case.
We need not rely entirely upon this, however. The language of the provision itself is indicative of the true intent of its adopters. It reads: "No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, * * *" (Emphasis added.) As pointed out by the late and revered Justice Armistead Brown in Spafford v. Brevard County, supra, 110 So. at page 457:
"* * * in the exercise of eminent domain for the acquisition of lands for state roads, neither [the State Road Department nor Brevard County] is acquiring anything for itself in its corporate capacity, but only for the state, and all that either may acquire under the act here in question will be `appropriated to the use of' the state. * * *850 The status of railroad and other private corporations, although they are permitted to condemn property only for public purposes, is quite different. * * * the title thereto, and the use, management, and operation thereof, is private, and the profits made go to the private owners. So, in a very real sense, the property acquired by the exercise of the delegated power of eminent domain by such corporations is `appropriated to the use of' the corporations, and this section of the Constitution applies."
Relevant here also is the fact that, prior to the Constitutional Convention of 1885, the Florida Legislature had delegated to public utility corporations (Ch. 1639, Acts of 1868) and to railroad and canal companies (Ch. 1987, Acts of 1874) the right to condemn rights of way and property for their use in providing their respective public services; and, presumably, by the year 1885 these private corporations were beginning to expand their activities in this state. It is also noteworthy that, prior to 1885, it had been held by federal and state courts that special benefits accruing from road or other improvements could be deducted not only from the amount awarded for severance damage but also from the amount awarded for the land itself in determining "just compensation." See McIntire v. State (Ind. 1840) 5 Blackf. 384; Weir v. St. Paul, S. & T.F.R. Co. (Minn. 1871) 18 Minn. 155; cases collected in the annotation in 68 A.L.R. beginning at page 784. (This is and has always been the interpretation of the "just compensation" clause of the Fifth Amendment to the federal constitution. See Baumann v. Ross, 1897, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; U.S. v. 1,000 Acres of Land (D.C.La. 1958) 162 F. Supp. 219.) The argument usually given in support of this interpretation of "just compensation" is that the property owner who receives direct, special and peculiar benefits to his remaining property as a result of the improvement has received something which the general public has not received and for which he should account. "Otherwise, he is favored above the rest, and instead of simply being made whole, he profits by the appropriation, and the taxes of the others must be increased for his special advantage." Pottawatomie County v. O'Sullivan, 17 Kan. 58. (Emphasis added.)
The taxing power of the state or a political subdivision thereof is not, of course, involved in a taking of property by a railroad or canal company or other private corporation for their use in providing a public service; and in requiring that full compensation shall be made for private property appropriated to the use of a corporation or individual "irrespective of any benefit from any improvement proposed by such corporation or individual", the framers of the Constitution of 1885 must have intended to make sure that the landowner would receive, at least, the value of the land actually taken by the private corporation for a right-of-way or terminal facilities without regard to the benefits that could or would accrue to the remainder of his property at some future date when the improvement was finally completed and which, in the late 1800's, would probably have been, in most cases, highly speculative at the time of the taking. See in this connection Orgel's Valuation Under Eminent Domain, 2d ed. 1953, Vol. 1, Sec. 7, p. 46, in which he says, inter alia, that "The development of the various doctrines restricting consideration of benefits was probably the result of the extensive railway acquisitions during the nineteenth century." It is also noteworthy that the section in question contains another limitation in that it specifically provides for the payment or deposit in advance of the amount of the compensation due to the landowner for the property appropriated to the use of the corporation. This is clearly for the purpose of protecting the owner from an improvident or insolvent private corporation or individual.
*851 It is our considered opinion, then, that the framers of the Constitution of 1885 intended to spell out, in Section 29 of Article XVI, what would be "just compensation" for property taken by a private corporation or individual for their use in performing a public service, and, in addition, the method of determining such compensation and the time of payment thereof; and that, by leaving Section 12 of the Declaration of Rights intact, they intended for the state and its agencies and political subdivisions to be subject to the more general provisions thereof  "nor shall private property be taken without just compensation".
The more general limitation contained in Section 12 of the Declaration of Rights  that private property shall not be taken "without just compensation"  is almost universally held to require that compensation be made for the taking, and that such compensation should include not only the value of the land actually appropriated by the condemnor but also the so-called severance damages, if any, caused by the taking when only part of a tract is condemned. See 18 Am.Jur., Eminent Domain, Sec. 265, p. 905. This was early established as the legislative policy of this state (Ch. 3712, Acts of 1887) and judicially approved by this court. See Orange Belt Railway Co. v. Craver (1893) 32 Fla. 28, 13 So. 444. The more general provision of Section 12 applies to all condemnors alike  whether public or private bodies  so that severance damage may be claimed, as "just compensation", regardless of whether the taking is by the state or by a private corporation or individual.
This disposes of the constitutional questions presented here; but in order completely to dispose of the case on appeal, as we are authorized to do, two more points need some clarification. One, appearing on the face of the record, we shall discuss by way of caveat; Cf. Great Northern Railroad Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254. See also special concurring opinion of Thornal, J. in State v. County of Palm Beach, Fla., 89 So.2d 607. The other has been presented here by the appellants but does not appear to have been properly presented to the lower court. Since we think that both are of importance to the Bench and the Bar of this state, as well as to the litigants in this case, we will discuss them briefly.
The first point which we need discuss concerns the authority of the Legislature of this state to enact Section 73.10(3), supra. This statute purports to say what compensation shall be paid to a landowner for property appropriated by the state or other public body for a road right-of-way, by declaring that
"* * * the enhancement, if any, in value of the remaining adjoining property of the defendant property owner by reason of the construction or improvement made or contemplated by the petitioner, shall be offset against the damage, if any, resulting to such remaining adjoining property of the defendant owner by reason of the construction or improvement * * *."
It has been said that "[t]he preservation of the inherent powers of the three branches of government  legislative, executive, and judicial  free from encroachment or infringement by one upon the other, is essential to the safekeeping of the American system of constitutional rule." Simmons v. State, 1948, 160 Fla. 626, 36 So.2d 207. And if the legislation hampers judicial action or interferes with the discharge of judicial functions, it cannot be given effect. 11 Am.Jur., p. 908, cited in Simmons v. State, supra.
It is well settled that the determination of what is just compensation for the taking of private property for public use "is a judicial function that cannot be performed by the Legislature either directly or by any method of indirection." Spafford v. Brevard, supra, 110 So. at page 455, quoted in State Plant Board v. Smith, Fla. 1959, 110 So.2d 401. See also Monongahela *852 Navigation Co. v. U.S. (1892) 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463; United States v. New River Collieries, 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; Baltimore & Ohio R. Co. v. U.S., 1935, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209.
As stated in Baltimore & Ohio R. Co. v. U.S., supra, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. at p. 1224:
"The just compensation clause may not be evaded or impaired by any form of legislation. Against the opposition of the owner of private property taken for public use, the Congress may not directly or through any legislative agency finally determine the amount that is safeguarded to him by that clause. If as to the value of his property the owner accepts legislative or administrative determinations * * * no constitutional question arises. But, when he appropriately invokes the just compensation clause, he is entitled to a judicial determination of the amount."
And in Monongahela Navigation Co. v. U.S., supra, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463, in which the Supreme Court struck down an Act of Congress purporting to exclude an element of value (the franchise to collect tolls) in the purchase of the lock and dam of the Navigation Company, the court said that just compensation means that "a full and perfect equivalent for the property taken" must be returned to the owner, and that
"By this legislation congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a judicial, and not a legislative, question. * * * It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry." (Emphasis added.)
It cannot be doubted, therefore, that the question of whether "enhancement in value" of the property as a result of the improvement, when only part of a tract is taken, should be offset against damages to the remainder in determining "just compensation" for such remainder damage, is a purely judicial question. Similarly, the question of what is a public use is a judicial one. But, as stated by Mr. Justice Brown, in Spafford v. Brevard County, supra, 110 So. at page 458:
"While the question of whether the use for which private property is taken is a public use is ultimately a judicial question, where the Legislature declares a particular use to be a public use, the presumption is in favor of its declaration, and the courts will not interfere therewith unless the use is clearly and manifestly of a private character."
And, as in the case of a legislative declaration of "public use", a legislative declaration of "just compensation" which is in accord with the judicial view of the matter should not be disturbed. As stated in Chesapeake & Ohio Canal Co. v. Key (1829) 3 Cranch, C.C. 599, Fed. Cas. No. 2,649, which involved a Virginia Statute containing a provision similar to Section 73.10(3):
"If the jury had not been required by the charter to consider the benefit as well as the damage, they would still have been at liberty to do so, for the constitution does not require that the value should be paid, but that just compensation should be given. * * * The insertion, therefore, of that provision in the charter which requires the jury to do what they would be competent to do without such a provision, and which, in order to ascertain a compensation which should be just towards the public, as well as just towards the individual, they ought to do, cannot be considered as repugnant to the constitution."
*853 Our conclusion in this respect is, then, that the Legislature may declare its policy with respect to the compensation that should be made in taking private property for public use; and that these declarations, while not conclusive or binding, are persuasive and will be upheld unless clearly contrary to the judicial view of the matter.
It might be noted that the State, speaking through its Legislature, may of course impose upon itself, and upon those to whom it delegates the right of eminent domain, an obligation to pay more than what the courts might consider a "just compensation." See Lewis, Eminent Domain, 3d ed., Vol. 2, Sec. 696, in which the author notes that this has frequently been done "by excluding the consideration of benefits." And the comment of the annotator in 145 A.L.R. at page 17 on this point is interesting. He says:
"In this field of uncertainty as to the meaning of the requirement of just compensation, there seems to be only one point as to which the courts are in agreement. No matter how much they disagree on the question as to whether and to what extent the constitutional requirement prevents the legislature from decreasing the compensation of an owner or condemnee by allowing the deduction of benefits therefrom, there seems to be substantial agreement that this requirement does not prevent the legislature from providing as against the condemning parties, what shall be deemed just compensation, and that the legislature, although it cannot direct that anything less than just compensation be made, may require more liberal compensation than that which would satisfy the constitutional requirement."
This brings us to the point argued in their Reply Brief by the appellants  and that is, that "enhancement in value" means that resulting from benefits which are special and peculiar to the remainder of the tract, a portion of which is taken, and not an enhancement in value which inures to the community in general or to the public in common; and that there was no evidence whatsoever that the increase in the market value of the remainder of appellants' tract was special or peculiar to it or any different from that accruing to the appellants in common with the public.
There is merit to their contention in this respect, but we cannot find that the appellants objected on this ground to the testimony of the appellees' witnesses as to increased market value of the remainder of appellants' tract of land. The position that they took throughout the trial, and in their original brief, was that no evidence whatsoever of "enhancement in value" was admissible, since the statute, Section 73.10(3), was unconstitutional.
Since there does not appear to have been any judicial statement by this court or any other court of this state concerning this matter, we direct the attention of the Bench and the Bar to the statement in 29 C.J.S. Eminent Domain § 183, p. 1064, as follows:
"By the weight of authority, the benefits which may be set off against the value of the property taken or the damage to that injured in making an improvement, are those which are special or local or which result directly and peculiarly to the particular tract [or parcel] of which a part is taken, and general benefits resulting to the owner in common with the public cannot be set off."
See also 18 Am.Jur., Eminent Domain, Sec. 298, page 942, stating that "Even where benefits may be deducted from the damages claimed, it is therefore the rule that only special benefits may be considered."
An annotation in 145 A.L.R., beginning at page 7, on the subject "Deduction of benefits in determining compensation or damages in eminent domain", deals exhaustively with the subject, including the many and diverse views of the courts in this *854 country as to the distinction between general and special benefits. As to this distinction, it has been said that more rules, different from and inconsistent with each other, have been laid down on this point than upon any other point in the law of eminent domain. See Territory of Hawaii v. Mendonca (Hawaii), 375 P.2d 6. In this case the court defined special benefit in highway condemnation cases as being "the special and direct benefit arising from its own position upon the way itself" as distinguished from those benefits "`not arising from location on the way, but from the facilities and advantages occasioned by the way' which affects all estates in the neighborhood equally * * *."
Thus, insofar as "enhancement in value" is concerned, evidence thereof would not be admissible without proof that the increase in value resulted directly and peculiarly to the landowner's remaining land as a result of the improvement, over and above that enjoyed by neighboring property which might or might not be on the highway. "The question in each case is whether or not the special facilities afforded by the improvement have advanced the market value of the property beyond the mere general appreciation of property in the neighborhood." Pittsburgh B & B Ry. Co. v. McCloskey, 110 Pa. 436, 1 A. 555, 556.
See also Shirley v. Russell (1927), 149 Va. 658, 140 S.E. 816, in which it was held by a majority of the court that the question of whether an increase in market value resulting from the construction of a public highway does or does not constitute a peculiar benefit which may be offset against remainder damage, must depend upon the facts and circumstances of each particular case; and the following cases, which deal extensively with the subject: State by and through State Highway Commission v. Bailey (1957), 212 Or. 261, 319 P.2d 906; Lineburg v. Sandven (1946), 74 N.D. 364 21 N.W.2d 808; State v. Smith (1957), 237 Ind. 72, 143 N.E.2d 666. It might be noted, also, that the construction of a street or highway may result only in damage to the remaining property and not necessarily work a benefit thereto. See Worth v. City of West Palm Beach, 1931, 101 Fla. 868, 132 So. 689; Boxberger v. State Highway Commission, 126 Colo. 526, 251 P.2d 920.
Since, as noted, the appellants did not raise in the court below the objection made, apparently as an after-thought, in their Reply Brief, concerning the question of whether the enhancement in value of their property constituted a general or a special benefit, we cannot hold the lower court in error in admitting evidence thereof for the consideration of the jury and in charging the jury thereon. We have, however, examined the evidence and do not find that the evidence of severance damage, against which the evidence of increased value may have been offset, was sufficient to warrant the jury in awarding an amount therefor. As the Second District Court of Appeal pointed out in City of Tampa v. Texas Co., 107 So.2d 216, the burden of showing damage to the remainder of a landowner's property by reason of the taking is upon the landowner. Upon the record made in the court below, the verdict and judgment must be affirmed.
It is so ordered.
THORNAL, O'CONNELL, CALDWELL and HOBSON (Ret.), JJ., concur.
THOMAS, Acting C.J., dissents.