EDGAR D. CRUMPACKER AND GLADYS M. CRUMPACKER, HUSBAND AND WIFE *v.* STATE OF INDIANA.

[No. 669S137. Filed August 3, 1971.]

*Arthur H. Gemmer, Gemmer & Frosch,* of counsel, of Indianapolis, *David R. Willis,* of Portage, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This is an appeal from the Starke Circuit Court wherein a jury trial resulted in a verdict for the appellants in the amount of $16,250. for the appropriation of lands for public use. The issue presented for review is whether the trial court properly excluded as evidence, after an offer to prove, the construction cost of a proposed road over a strip of the residue property. The appellants also contend the testimony should have been admitted as rebuttal evidence in order to rebut the condemnor's evidence that the residue suffered no damage.

The appellants were the owners in fee simple of a parcel of real estate located in Portage, Indiana. The State of Indiana brought an action against the appellants under its eminent domain powers to condemn five and seventy-four hundredths [5.74] acres of that parcel for highway purposes, said highway being Interstate 94, a limited access highway. After the taking there were two residual parcels: one of seven hundred sixty-two thousandths [.762] acres north of the property taken and one of forty-eight and forty-four thousandths [48.044] acres south of the property taken. There is some controversy as to the amount of land remaining south of the subject property, but the quality is not germane to this appeal.

The controversy here turns upon the facts that the 48.044 acre tract south of both the property taken and Interstate 94 originally had access through the property taken for highway purposes, but after the taking, access could be had only through a presently unusable strip one hundred [100] feet wide, running westerly from Marine Drive, which was two [2] feet below the grade of the drive and now overgrown with brush and trees. Appellants claim that they were entitled to include as damages the cost of

constructing a road over this strip, making it physically accessible. The difference between the value of the tract before the taking and that after the taking is the correct measure of damages. 11 I.L.E., *Eminent Domain* § 53, p. 610, states:

> "Where only a part of a tract, parcel or lot is taken in the exercise of the power of eminent domain, the owner generally is entitled to recover damages not only for the part taken, but also for the damage which naturally accrues to the residue from the taking; and in fixing damages in condemnation proceedings instituted under the Eminent Domain Act of 1905, as amended, not only the fair market value of the land appropriated, but the damage to the residue of the owner's land, is to be considered.

> "Ordinarily the measure of damages is the injury done to the market value of the entire tract by the taking of only a part, or, in other words, the measure of damages is the difference between the market value of the entire tract before the taking and the market value of the residue after the taking." [footnotes omitted]

Under Burns Indiana Stat. Anno. § 3-1706, court appointed appraisers are to determine inter alia, the "damages, if any, to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated." The defendants here claim damages because of physical non-accessibility. No issue has been raised concerning possible benefit to the residue.

Though damages are computed according to the "before and after" rule, a party should be able to introduce evidence of specific items of damage that an appraiser, for example, would not set value to, though he would include their effect on the market value of the tract in his appraisal. Such testimony is relevant in that it substantiates the valuations of the appraisers. Of course, it must be shown that such damages, if they are necessary expenditures, will not exceed the value of the land after the expenditures.

In *Glendenning et al.* v. *Stahley et al.*, (1910) 173 Ind. 674, 682 91 N.E. 234, 237, this Court stated:

"The question of additional fencing should not be submitted or determined as an independent or ultimate fact, but only in connection with other facts and circumstances given in evidence, tending to enhance or depreciate the value of the property after the construction of the proposed improvement. The measure of damages must not be confounded with the elements of damage. In the case of *Pittsburgh, etc., R. Co.* v. *McCloskey,* (1885) 110 Pa. St. 436, 1 Atl. 555, involving an appropriation for a railroad, the court very concisely covered the subject in the following paragraph: 'The inconvenience, arising from a division of the property, or from increased difficulty of access, the burden of increased fencing, the ordinary danger from accidental fires to the fences, fields or farm buildings, not resulting from negligence, and generally all such matters as, owing to the particular location of the road, may affect the convenient use and future enjoyment of the property, are proper matters for consideration; but they are to be considered in comparison with the advantages, only as they affect the market value of the land. The jury cannot include in the verdict a fund to cover the costs of fencing, or to provide an indemnity against losses by fire, or casualties to the cattle and stock upon the farm.' See, also, *Hanrahan* v. *Fox,* (1877) 47 Iowa 102; *Parker County* v. *Jackson,* (1893) 5 Tex. Civ. App. 36, 23 S.W. 924; 3 Sedgwick, Damages (8th Ed.), § 1163."

4 Nichols on Eminent Domain, § 14.232, *Before and after rule,* p. 547, states:

"The alternative to the rule discussed in the previous section is that the measure of compensation when part of a tract is taken is the difference between the fair market value of the whole tract before the taking and the fair market value of what remains after the taking. Under this rule the damages sustained by the owner for the land taken and the damages to the remainder area are not segregated, but are treated as a unit. However, it has been held that where a practical approach requires appraisal on a before and after basis of fractional parts of the entire property and the danger of duplication is minimal in character, the rule requiring appraisal of the entire unit as a whole may be disregarded. The question for the tribunal which makes the award is merely how much less is the tract as a whole worth with a piece taken out of it or an easement established over or through it than it was worth before the dismemberment. It necessarily follows that, in determining

the value of the property after the taking for the purpose of estimating the amount of depreciation, the tribunal which assesses the damage is bound to take into consideration every element which a purchaser willing but not obligated to buy would consider. *The separate items may be considered not as specific items of loss, but merely with respect to their effect upon the market value.*" [Emphasis added, footnotes omitted]

In *State* v. *Smith et ux.*, (1957) 237 Ind. 72, 143 N.E.2d 666, this Court held that testimony as to the cost of fencing was properly admitted inasmuch as the fencing would not have been necessary if the highway had not been constructed in that location, thereby bisecting the farm. Similarly, in *State* v. *Vaughan et ux.*, (1962) 243 Ind. 221, 184 N.E.2d 143, we held that it is not error to admit evidence if it is relevant, material, and competent for any use. In that case, we stated that it was proper for the jury to consider testimony regarding the amount of fill which would be necessary in order to render the land suitable for a possible use contemplated by the owner. This Court held in *Cleveland, etc., R. Co.* v. *Smith*, (1912) 177 Ind. 524, 97 N.E. 164, that damages were to be compensated where water had to be diverted to make use of the water as before the appropriation, but that the amount of damages properly allowable could not exceed the value of the use of the flowing water as it existed before the appropriation. See also 27 *Am. Jur. 2d., Eminent Domain* § 311, p. 129, where it is stated: "But these direct damages may not, as a rule, exceed the difference between the fair market value of the tract immediately before the taking and the fair market value of the remainder immediately after the taking. Or, as frequently stated by the courts, these particular items of injury are not to be allowed as separate items of damage, but are merely to be considered in estimating the depreciation in the value of the land." [footnotes omitted]

The State contends that the offer of proof was not responsive to the question, that there was no preliminary proof that the proposed width of the road was proper and reasonable to render defendants' use of the subject property for farming

suitably accessible, and finally that the admission of the construction cost would not have benefited defendants since none of their value witnesses based their depreciation of the residue in question on a lack of access to that residue. We think it is clear that the twelve [12] foot wide road would be suitable for farming purposes and that the offer of proof contained facts responsive to the question. Furthermore, regardless of how the defendants' value witnesses determined the market value of the residue, physical access is a relevant consideration in the evaluation of real estate.

The judgment of the trial court is therefore reversed and the cause is remanded and a new trial ordered.

Prentice, DeBruler, Hunter, JJ., concur; Givan, J., dissents with opinion.

### DISSENTING OPINION

GIVAN, J.—I dissent from the majority opinion. I think the authorities cited therein uphold the decision of the trial court to exclude the evidence of the cost of the construction of a proposed road to the residue of the property. It is my understanding of the authorities cited that to first allow the before and after value damage, then to additionally allow as an element of damage the cost of driveway construction is a practice which is commonly known in eminent domain proceedings as pyramiding the damage. That is, the property owner is first paid full damage on a before-after basis to which is then added the cost of increasing the diminished value of the land.

I would, therefore, affirm the trial court.

NOTE.—Reported at 271 N.E.2d 716.