## Susanna Comstock and J. W. Comstock *v.* Clearfield & Mahoning Railway Co., Appellant.

*Railroads—Eminent domain—Consequential damages.*

Where a railroad company constructs its railroad upon a portion of a town lot, the owner of the lot is entitled to recover, not only the value of the land actually taken, but also damages for the depreciation in the value of the remainder of the lot, and the jury, in determining the amount of such damages, may consider all the injuries which would probably and naturally result from the reasonable and usual operation of the railroad, such as annoyance from smoke, noise, dust, and jarring of the house by passing trains.

In such a case it is proper to admit evidence of the construction of a water tank near plaintiff's building, not as ground for damages by such

construction, but that its location with reference to the property multiplied trains at that point, and that a more frequent use of the roadbed on plaintiff's property was the result.

Argued April 26, 1895.   Appeal No. 460, Jan. T., 1895, by defendant, from judgment of C. P. Clearfield Co., Sept. T., 1893, No. 549, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Appeal from award of viewers.   Before GORDON, P. J.

At the trial plaintiff proposed to prove by Thomas W. Moore, the witness on the stand, that in making up his estimate of the depreciation, amounting to one half of the value of this property, the following specific elements of damage entered into it: Dust and smoke and cinder, the shaking of the house, the running of locomotives and of trains, and on account of the peculiar location of the railroad at this point with reference to the uses, the ordinary uses of the property in contention here as a residence, and to any other use.

This was objected to, (1) because consequential damages cannot be recovered in a proceeding under the act of 1849; (2) that the elements alleged to enter into the claim are such as arise from the proper, legal and legitimate operation of the railroad, and for which the defendant is not answerable in a proceeding of this character; that in order to recover such damages, plaintiff must bring a common law action; (3) the evidence proposed is improper and incompetent; that the only evidence admissible is as to the depreciation of the property in its market value immediately before and immediately after the construction of the road.

The court, being of the opinion that items of damage to this property resulting from the ordinary and proper use of the railroad are proper to be taken into consideration by the jury in passing upon the question of how the property, the market value of the property, is affected by the construction of the road, overruled the objection, admitted the evidence and sealed a bill for defendant. [1]

The witness was then asked the following question: "Now, Mr. Moore, in passing upon the value of this property, do we understand when you say that you wouldn't have the property at all, that you wouldn't have it in its uses as a dwelling house

at that point where the railroad is, in the ordinary operation of the railroad, in the moving of its cars, and at the distance that property is, that dwelling house is from the railroad, would you have the property as a dwelling house?"

By Mr. Fielding: "The question is objected to as irrelevant and incompetent."

By the Court: "Objection overruled and evidence admitted." [2]

Plaintiff proposed to prove by the witness on the stand, Thomas Moore, that as an additional reason to what he has already testified to and as an element of damage, the existence of the water tank at a point one hundred and twelve feet from said property of plaintiff, and that the effect of the ordinary running of the trains over the road will cause such annoyance to plaintiff as will depreciate the market value of the property.

This was objected to, (1) because the proper use of a water tank is a necessary, usual and ordinary incident to the operation of a railroad, and there is no offer to show its improper location, construction or use; (2) because plaintiff cannot recover in this case for consequential injury to her property from the erection of a water tank not erected upon the property taken by defendant company from plaintiff; (3) because it is not competent for plaintiff to prove the ordinary use and operation of the road as affecting the property of the plaintiff under this proceeding founded upon the act of 1849, for the assessment of damages; (4) because plaintiff cannot recover for consequential injury to her property by reason of the usual, ordinary and proper operation of the railroad; (5) because the evidence offered is inadmissible, incompetent and irrelevant.

The court overruled the objections and admitted the testimony, not as proving damages to the property resulting from the operation of the road, but as showing the existence of the water tank, and its location with reference to the property in question and the railroad tracks upon it, as an element tending to affect the market value. [3]

The court admitted similar offers of testimony to show depreciation in the value of the property by the ordinary operation of the road in close proximity to plaintiff's building. [4–13]

Defendant's points were, among others, as follows:

"4. The defendant company, being a lawfully chartered and incorporated railroad company, under the laws of this commonwealth, it cannot be held responsible for the usual, proper and ordinary operation of its road, although the same may cause annoyance to plaintiff by reason of smoke, noise, cinders or dust arising from the proper operation of the road.

"5. The true measure of damages in this case is the difference in the market value of the property when the defendant appropriated the land, and the market value when the road was completed, and this cannot be increased by taking into consideration annoyance from smoke, noise, dust or jarring of the house by passing trains. *Answer:* We affirm those points, gentlemen of the jury, with this qualification. As we have already stated to you in our general charge, you must estimate these damages as of the time the property was taken. Estimating them at that time in the manner in which we explain to you in our general charge, you arrive at how the market value was affected by the construction of the railroad, the difference between its market value before and afterwards, and having arrived at the damage in that manner, you cannot increase that by taking into consideration annoyance from smoke, noise, dust or passing trains in the operation of the road. What they may have done to carry on the operations of that road is immaterial; the damages, as before stated, are to be ascertained as of the time of taking, and when the damages are thus assessed and ascertained, the railroad company cannot thereafter be held liable for the ordinary and lawful operation of their road, even though it does work an annoyance to the property owners along its line, including this plaintiff." [14]

"6. For any depreciation in the market value of plaintiff's property by reason of the noise, smoke, cinders, jarring and other inconvenience from passing trains, the plaintiff is not entitled to recover in this proceeding. *Answer:* If by this point it is meant that you cannot consider the noise, smoke, cinder and jarring, and other inconveniences from trains passing, in the operations of the road, we affirm it. But, if it is meant that in estimating the damages as of the time the land was taken, you are not to consider these things as likely to arise in the proper and ordinary operation of the railroad in the future, we decline to affirm it. As stated, it is a correct proposition of law." [15]

Plaintiff's points were among others as follows:

" 7. The plaintiff is entitled to such damages as shall be proved, by reason of the construction of the railroad and of such future operations of such railroad, as shall be likely. *Answer:* We affirm that point. The damages, however, must be estimated, as before stated, as of the time of taking. [16]

" 10. In making up the verdict, the jury have a right to consider the annoyance of said railroad in its ordinary operation to this property, such as running of locomotives, shaking of the house, dirt, noise, and smoke, and the peculiar location of said railroad to this property, in addition to the value of the land taken. *Answer:* We affirm that point. All of these elements are to be considered by the jury, as we have before stated, as of the time of taking." [17]

The court charged in part as follows:

" We desire, however, to remind you, that the only damages which you can consider are those resulting from the ordinary operation of the road in a lawful and proper manner, and not such damages as may result from negligence in the operations. A railroad company is required by law to employ nothing but competent and careful employees, and to use proper, approved and safe appliances, and that if they fail to do so and damages result, such as from fire caused by cinders from a locomotive emitted on account of negligence of an employee or failure to use proper spark arresters, they are liable to the party injured for these damages as they arise. Therefore, the jury should not consider the danger or liability to such damages in arriving at their verdict. But you are to consider the damages which are likely to arise or result from the ordinary operations of the road in a proper manner. Among these are the ordinary dangers from fire, smoke, cinders, shaking of surface and noise, resulting from the running of engines and trains upon its tracks and sidings upon plaintiff's property, including also the value of land taken, injury to garden, occupation of alleys, and interfering with access to the property, and all other elements of actual damages likely to result, excluding—as before stated—all vague and indefinite elements of damages or imaginary damages, and confining yourselves to those which are real and which substantially affect the market value of the property. These damages, it is true, are consequential in their nature;

but they are none the less real and substantial, and it is entirely proper and right for you to consider them in estimating the damages which this plaintiff has sustained, by reason of the construction and operation of the road." [18]

Verdict and judgment for plaintiff for $375. Defendant appealed.

*Errors assigned* were (1–13) ruling on evidence, quoting the bill of exceptions; (14–18) above instructions, quoting them.

*Frank Fielding, C. H. McCauley* with him, for appellant.— Injuries sustained after a railroad is completed do not constitute elements of damage in condemnation proceedings: 1 Weimer's Pennsylvania Railroad Law, 192; Gilmore v. Pittsburg, Virginia & Charleston R. R., 104 Pa. 275; Searle v. The Lackawanna & Bloomsburg R. R., 33 Pa. 57; Lehigh Valley R. R. v. Lazarus, 28 Pa. 203; New Castle & Franklin R. R. v. McChesney, 85 Pa. 526; 1 Weimer's Pennsylvania Railroad Law, 309; Penna. R. R. v. Marchant, 119 Pa. 541.

*S. V. Wilson,* for appellee.—Plaintiff is entitled to damages for injuries caused by the usual operation of the road: Western R. R. v. Johnson, 59 Pa. 296; McKinney v. Monongahela Nav. Co., 14 Pa. 65; Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411; Hoffer v. Pennsylvania Canal Company, 87 Pa. 224; Western Penna. R. R. v. Hill, 56 Pa. 464; Gilmore v. Pittsburg R. R., 104 Pa. 275; Pittsburg Junction R. R. v. McCutchon, 18 W. N. C. 527; R. R. v. Lippincott, 116 Pa. 472; Penna. R. R. v. Marchant, 119 Pa. 541.

The plaintiff is entitled to such damages as shall be proved by reason of the construction of the railroad and of such future operation of such railroad as shall be likely: Pa. S. V. R. R. v. Walsh, 124 Pa. 551; Setzler v. Pa. Schuylkill Val. R. R., 112 Pa. 65; Pittsburg, Bradford & Buffalo Ry. v. McCloskey, 16 W. N. C. 561; Gilmore v. Pittsburg etc. R. R., 104 Pa. 275.

OPINION BY MR. JUSTICE DEAN, July 18, 1895:

Plaintiff was the owner of two adjoining lots in the borough of Curwensville, Clearfield county. Upon one lot, there was a dwelling house. In 1892, defendant located its railroad

through these lots; it passed along an adjoining alley on the south side of the lots and appropriated of her ground a strip about twenty-five feet at one end, increasing to forty-seven feet at the other; the quantity taken, was about 2200 square feet. The dwelling is about one hundred and twenty feet from the railroad. Viewers having been appointed, and damages assessed, the company appealed to the common pleas, and there was a trial by jury, who gave a verdict for a small amount more than the award of viewers. The defendant, being dissatisfied with the verdict, now appeals to this court, assigning eighteen errors to rulings on offers of evidence and charge of the court below.

The thirteen assignments of error to the ruling of the court on admissions of evidence, can be best considered after a determination of the averments of error in the law.

The defendant's fifth prayer for instruction, is as follows:

" The true measure of damages in this case, is the difference in the market value of the property when the defendant appropriated the land, and the market value when the road was completed, and this cannot be increased, by taking into consideration annoyance from smoke, noise, dust, or jarring of the house by passing trains."

To this, the court answered:

" We affirm those points, with this qualification. As we have already stated to you in our general charge, you must estimate these damages as of the time the property was taken. Estimating them at that time in the manner in which we explain to you in our general charge, you arrive at how the market value was affected by the construction of the railroad, the difference between its market value before and afterwards, and having arrived at the damage in that manner, you cannot increase that, by taking into consideration annoyance from smoke, noise, dust or passing trains in the operation of the road. What they may have done to carry on the operations of that road, are immaterial; the damages,—as before stated,—are to be ascertained as of the time of taking, and when the damages are thus assessed and ascertained, the railroad cannot thereafter be held liable for the ordinary and lawful operations of its road, even though it does work annoyance to the property owners along its line, including this plaintiff."

In accord with the same idea, the court said to the jury in its general charge, they were not to consider any injury resulting from negligence on part of inefficient or negligent employees, or use of improper spark arresters, or smoke or dust arising from negligence, but: "You are to consider the damages which are likely to arise from the ordinary operations of the road in a proper manner. Among these, are the ordinary danger from fire, smoke, cinders, shaking of surface, and noise resulting from the running of engines and trains upon its sidings and tracks upon plaintiff's property, including also the value of the land taken."

In applying the legal rules in the estimate of damages, the situation of the property in the particular case must be considered; if defendant had located its road on a one hundred acre farm, and appropriated from the one corner of it 2200 square feet of land, while the farm dwelling and improvements were located half a mile distant on another part of the tract, the value of the farm, as affected by the construction of the railroad, would probably have been the same, less only the value of the land actually taken; the house would not have been jarred by moving trains; there would have been no appreciable diminution of value by reason of the ordinary operations of the railroad. But here, the road was located on the adjoining alley and diagonally across plaintiff's town lots, one hundred and ten feet from her dwelling. The argument of appellant is, that because the jarring, smoke, noise and dust of passing trains was incident to the ordinary operations of the railroad, therefore they could not be considered by the jury. But the act itself directs:—1. That the quantity, quality and value of the land taken, shall be first considered, and 2. Then a fair and just comparison of the advantages and disadvantages shall be made. And we held in Hoffer v. Railroad Co., 87 Pa. 224, that this included damages purely consequential. The jury is not to estimate this class of injuries, item by item, as they estimate the quantity, quality and value of the land taken; are not to estimate a certain sum in dollars for each, and add them all together, and thus reach the amount of damages from this source, but they have a right to consider from the proximity of the road to the building, that such disadvantages as these, arising from the ordinary and lawful operations of the road,

will necessarily affect unfavorably the value of the property. In Railroad Co. v. Hill, 56 Pa. 464, we held that loss of custom to a flour mill could be considered in the estimate of damage, because the location of the road with reference to the mill had rendered access to it dangerous to horses and teams. In Gilmore v. Railroad Co., 104 Pa. 275, we held, that while distinct injuries sustained after the completion of the road cannot be included in the estimate of damages, yet in making up their verdict the jury had a right to consider all the injuries which would probably and naturally result from the reasonable and usual operation of the road, and that evidence of the proximity of the buildings to the railroad and passing cars was admissible. In Railroad Co. v. McCutcheon, 18 W. N. C. 527, the court below instructed the jury thus:—"How much is the property worth, or how much would it have yielded during the term, without the railroad, and how much less will it yield, in all probability, so far as we can foresee, under the testimony, with the railroad there and operated in the ordinary way, locomotives running over it, shaking the buildings, making smoke and dirt, and affecting by this annoyance the value of the property?"

This was held not to be error, and the judgment was affirmed. And so in numerous cases, the same principle is adopted. To so hold, is but to enforce the constitutional mandate, that "Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements."

If the necessary consequence of the construction of this railroad, and its operation upon this property, was the depreciation of value, then the plaintiff was injured, and was entitled to compensation in the amount of her injury. And this is the fair construction of the law, as declared by the court below; it eliminated from the estimate any consideration of damages not the necessary consequence of the construction and operation of the road in the particular place, that is, in proximity to the building. This was not permitting the jury to include in their estimate distinct damages which would be sustained after the completion of the road. The injury had then been sus-

tained, by the mere fact of construction, if the property was then worth less than before. It was not the case of Gilmore v. Railroad Co., supra, where the offer was to prove distinct injuries by fire, after construction and operation of the road.

We think, under the settled adjudications, the court correctly declared the law of the case. This, in substance, disposes of defendant's last five assignments of error, which allege error in the charge and answers to points.

From first to thirteenth, inclusive, error is assigned to the admission of evidence offered by plaintiff. These offers bore distinctly on how the property was affected by the location of the road upon it, and its depreciation in value by reason thereof; the evidence tended to show, that by reason of the proximity of the road to the building, the annoyance from shaking by passing of heavy trains, and from dust, cinders and smoke, was very great, and as a consequence, the building was undesirable as a residence, and the value of the entire property thereby was greatly lessened.

The evidence as to the construction of the water tank was offered, not as ground for damage by such construction, but that its location with reference to this property multiplied trains at that point, and a more frequent use of the roadbed on plaintiff's property was the result. The water tank, located as it was, formed part of the construction and operation of the road through plaintiff's land.

We can imagine the lawful construction and operation of a railroad through a small property, which would absolutely destroy its value as a residence, and for most other purposes. Certainly, the owner in such case is not compensated by the price of the few square feet occupied as a roadbed ; nor is he compensated by a like small sum, if his property outside of the roadbed be seriously injured and lessened in value.

We do not think any of the assignments of error can be sustained.

The judgment is affirmed.