## Sechler v. Commonwealth

*William L. Kimmel*, of *Kimmel, Rascona, Yelovich & Bowman*, for condemnee.

*William D. Miller, Assistant Attorney General*, for condemnor.

COFFROTH, *P.J.*, January 16, 1979—In this eminent domain case, defendant Commonwealth has moved for a new trial following a jury verdict for plaintiffs for $56,000 found payable as just compensation for a taking of portions of plaintiffs' farm for highway purposes. The new trial motion raises the following alleged trial errors:

1. Admission of testimony of noise and annoyance from highway traffic as a factor affecting fair market value of the property, and refusal by the trial judge (Coffroth, *P.J.*) to instruct the jury that such noise and annoyance could not be taken into consideration;

2. Rulings on comparability of sales of other lands;

3. Refusal to allow cross-examination of plaintiffs' expert "regarding the absence of comparable sales in his testimony" in other cases;

4. Impropriety of statement by counsel for plaintiffs in closing argument to the jury;

5. Refusal of individual poll of the members of the jury after verdict; and

6. Excessiveness of the verdict.

Highway Traffic Noise and Annoyance:

The property affected by the condemnation is a small dairy farm near Somerset containing 78.63 acres, from which the Commonwealth took 13.7 acres for construction of new state highway route 219, a double lane limited access highway, and for widening a township road crossing the state highway. The appropriation of land for the new highway crossed the agricultural fields of the farm, isolating and landlocking 3.93 acres of the farm land. The taking substantially affected the grading and drainage of the remaining portion of the farm and physically affected the manner and efficiency of its operation. The farm is well equipped, well cared for, has a large barn and outbuildings in excellent condition, and plaintiffs husband and wife make their home in the dwelling house on the farm which is a well constructed frame building in excellent condition.

It was apparent at the view of the property (which is evidentiary under section 703(1) of the Eminent Domain Code of June 22, 1964, Sp. Sess. P.L. 84, 26 P.S. §1-703(1) hereinafter called Code) that plaintiffs' land and buildings were so close to the new highway constructed on the condemned right-of-way as necessarily to bring substantial annoyance to the occupants of the property from traffic noise which did not prior to the taking emanate from the peaceful surrounding countryside. According to the property draft in evidence, the distance between the nearest point of plaintiffs' house to the highway

right-of-way scales at 122 feet and the distance between the nearest point of the barn and the highway right-of-way scales at 75 feet. The whole testimony in the record as to the effect of traffic noise on plaintiffs' property is as follows:

Direct examination of plaintiff husband:

"Q. Did the fact that the new 219 came near to your barn cause you any particular problems in your operation?

A. It causes a lot of problems with our operation. As far as the noise—"

(On objection, further examination on the subject of noise was deferred until later. See subsequent side bar discussion overruling the objection to testimony as to noise.)

Direct examination of plaintiff continued:

"Q. Now, Mr. Sechler, back to the noise question. What effect upon your property and your residence has the new 219 had upon you and your family?

A. Well, we get a lot of drag racing out on new 219 from the sign to the sign.

Q. Does it present the noise—

Mr. Miller: Your Honor, I believe drag racing is illegal.

The Court: We sustain that objection.

Mr. Miller: I believe that would be within the police power and I don't believe—

Mr. Kimmel: I agree, your Honor, and I move that the answer be stricken.

Q. You can refer to specifics. Just generally, Mr. Sechler. How has the noise affected your premises there and your home?

A. Our privacy, I think, is the biggest thing. We have to keep the doors always shut when you have company. You can't talk.

Q. Do you have any fumes?

A. Can't sit out on the—

Q. Do you have fumes and that sort of thing from the highway?

A. No, we have never noticed that much of the fumes.

Q. Do you have noise?

A. Plenty of noise.

Q. Is that what you're referring to that you keep the doors and the windows shut?

A. Yes.

Q. And prior to the time that 219 went through, what was the characteristic of the area?

A. We had a lot of peace and quiet, privacy."

Direct examination of plaintiff wife:

"Q. I want to direct your attention, so we don't repeat everything, mainly to the house, although you help with the farm. What effect has 219 had upon the house in which you live and the way you now reside there with your husband and child?

A. The view, of course, would be probably my main objection. Previously it was just a quiet pasture. Now it is a noisy highway. A noisy highway and a dirty highway."

Direct examination of plaintiff wife continued:

"Q. What effect has the noise and dirt had upon the way you live in the house now as far as the windows and that sort of things are concerned?

A. We have two doors going into the house, one of course comes into the living room. That's not the door that normally is used. We use the side entrance. And Jim and I never put screens in that door because it is just too noisy to keep the outside door open. I leave the storm doors—or the storm windows in that door so that we can, in the summer

time, keep the inside door open and have the light come in but not the noise. And I might add that the windows on that side of the house has the same effect. We do not open them."

Mr. Custer, a valuation expert called by plaintiffs, testified on direct examination that he took into consideration the "close proximity of the roadway" to the barn. None of those witnesses was further examined or cross-examined on the subject, and it was not mentioned by any other witness. Moreover, neither counsel referred to the matter in closing argument and it was not mentioned in the court's instructions to the jury. The trial judge refused without reading the Commonwealth's ninth request for charge as follows: "9. In determining the damages, you shall not take into consideration such inconveniences and disadvantages as noise and annoyance of highway traffic because these are results of the lawful and proper use of the highway and are common to other landowners in the neighborhood and effect (sic) the community generally."

Commonwealth counsel's contention is that in eminent domain cases highway noise and disturbance are the natural and unavoidable result of the proper operation of the highway and affect the community along the highway as a whole, and are therefore damnum absque injuria (damage without legal injury); that these effects may not be considered in arriving at the value of the property after the condemnation; and that only if there is some special impact upon the property from such highway noise and disturbance, not common to the community as a whole, are such factors considerable in fixing the after value. Moreover, the Commonwealth's ninth point for charge quoted above

does not merely instruct the jury to disregard the effects of traffic noise and annoyance if they find that such effects are common to other landowners in the vicinity of the highway, but seeks a declaration as a matter of law that "you shall not take into consideration" such effects "because these are results of the lawful and proper use of the highway and are common to other landowners in the neighborhood and effect [sic] the community generally."

The Commonwealth's brief states: "Our research has found no Pennsylvania case directly deciding whether evidence of traffic noise common to the community is admissible as an element of severance damages. It is submitted that the weight of opinion in other jurisdictions holds that noise is not an admissible element of severance damage."[1]

Our research on the contrary indicates that the law of Pennsylvania on the subject is fairly clear

---

1. Citing: Richards v. Washington Terminal Co., 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914); Baltimore & Potomac R.R. Co. v. Fifth Baptist Church, 108 U.S. 317, 2 S.Ct. 719, 27 L.Ed. 739 (1883); Chicago Great Western Ry Co. v. First Methodist Episcopal Church, 102 Fed. 85 (CCA 8, 1900) (8th Cir. 1900); Hall v. Wilbarger County, 37 S.W. 2d 1041 (Tex. Civ. App. 1931) aff'd 55 S.W. 2d 797 (1932); State v. Wilson, 439 S.W. 2d 134 (Tex. Civ. App. 1969); State v. South Main Baptist Church, 361 S.W. 2d 898 (Tex. Civ. App. 1962); State v. Watkins, 51 S.W. 2d 543 (Ct. App. Mo. 1932); State v. Sharp, 62 S.W. 2d 928 (Ct. App. Mo. 1933); State v. King Bros. Motel, 388 S.W. 2d 522 (Ct. App. Mo 1965); State v. Garrick, 260 La. 340, 256 So. 2d 111 (1971); People v. Volunteers of America, 21 Cal. App. 3d 111, 98 Cal. Rptr. 423 (1971); Arkansas State Hwy. Comm'n. v. Manning, 252 Ark. 10, 477 S.W. 2d 176 (1972); Morgan County v. Griffith, 257 Ala. 401, 59 So. 2d 804 (1952). These are a mixture of railroad and highway cases, some of which clearly support the Commonwealth's contention, some which support it less clearly, and others do not support it at all.

that where there is an actual taking of a portion of land for a railroad or highway, the effects of noise and highway annoyance, which are the necessary consequence of lawful and proper operation of the road (as distinguished from negligent operation thereof), upon the market value of the unappropriated residue, may be considered by the fact finder in determining the after value of the residue. In analyzing the authorities, we think it will be helpful to divide the discussion into: (1) the pre-code decisions and (2) the code provisions.

Before looking at these authorities, the adverse impact of environmental noise upon the use and enjoyment of property and on its value cannot be denied. We need not go beyond common experience to learn that fact of life, which is recognized by the courts. In Sisters of the Blessed Sacrament, etc. v. Philadelphia, 413 Pa. 348, 353, 197 A. 2d 223 (1964), the court had this to say of noise annoyance:

"Under its right of easement, the City may turn the plaintiffs' property into a recreational area. A City witness testified that the land could be used for camping, recreational activities, outdoor gatherings, picnics with tables and benches. In addition, the City would permit the laying out of a baseball field and the building of shacks. To say that the tumult, shouting, yelling and littering which would accompany the activities mentioned would not affect the market value of a residential property is to wear dark glasses and ear plugs."

Today, noise from superhighway traffic is not only annoyance but is regarded as pollution itself as it fractures rural quietness and privacy, to say nothing of the chemical pollution spewed into the air. While such traffic has its benefits to our highly

organized society, that same society will not benefit if those polluting effects become so pervasive that there is no escape from them anywhere. Compare In re: Tax Sale, City of Johnstown, 27 Somerset 78, 97 (1971). As the areas of retreat are gradually diminished by "progress," the aesthetic virtues of the more quiet rural life become scarce and turn into solid money value as large numbers of people bid up rural property which can offer a way of life relatively unmolested by such intrusions. Today silence and privacy are both golden. Compare Dennison v. State, 22 N.Y. 2d 409, 293 N.Y.S. 2d 68, 239 N.E. 2d 708, 709 (1968).

A. Pre-Code Decisions:

The following pre-code decisions support our thesis: Comstock v. Clearfield & Mahoning Railway Co., 169 Pa. 582, 589, 32 Atl. 431 (1895). In this case the railway condemned a portion of plaintiffs' town lots on which their residence was located about 120 feet from the railroad. The trial judge charged the jury that they could consider as affecting market value "the damages which are likely to arise from the ordinary operations of the road in a proper manner. Among these, are the ordinary danger from fire, smoke, cinders, shaking of surface, and noise resulting from the running of engines and trains upon its sidings and tracks upon plaintiff's property, including also the value of the land taken," as opposed to damages for inefficient or negligent operation.

The Supreme Court in affirming gave legal recognition to a self-evident physical fact that the impact of a given noise level upon the use and enjoyment of land, and therefore upon its value, is in most cases largely a function of distance between

the affected land and the source of noise, and that a jury is competent to evaluate that impact according to the distances and relevant circumstances proved. The court said pp. 589-90:

"In applying the legal rules in the estimate of damages, the situation of the property in the particular case must be considered; if defendant had located its road on a one hundred acre farm, and appropriated from the one corner of it 2200 square feet of land, while the farm dwelling and improvements were located half a mile distant on another part of the tract, the value of the farm, as affected by the construction of the railroad, would probably have been the same, less only the value of the land actually taken; the house would not have been jarred by moving trains; there would have been no appreciable diminution of value by reason of the ordinary operations of the railroad. But here, the road was located on the adjoining alley and diagonally across plaintiff's town lots, one hundred and ten feet from her dwelling. The argument of appellant is, that because the jarring, smoke, noise and dust of passing trains was incident to the ordinary operations of the railroad, therefore they could not be considered by the jury. . . . The jury is not to estimate this class of injuries, item by item, as they estimate the quantity, quality and value of the land taken; are not to estimate a certain sum in dollars for each, and add them all together, and thus reach the amount of damages from this source, but they have a right to consider from the *proximity* of the road to the building, that such disadvantages as these, arising from the ordinary and lawful operations of the road, will necessarily affect unfavorably the value of the property." (Emphasis supplied.)

The view thus expressed by the court is diametrically opposite that advocated in the Commonwealth's brief in urging upon us the philosophy expressed in State v. Watkins, 51 S.W. 2d 543 (Ct. App. Mo. 1932), where there was a partial taking and the court said p. 545:

"Defendants, no doubt, were subject to annoyances more than would be other abutting landowners whose houses were situated greater distances from the highway. But the jury should not be expected to, and could not fairly, consider fine points of distances in order to determine that defendants were damaged by reason of noises from passing vehicles more than were other persons living on the highway. Our Supreme Court has held that even the noise of trains, common to other landowners in the neighborhood, is not a proper element of damages in cases of this character. . . . Certainly the same rule should be applied to motor traffic which, in that respect, can hardly be compared to the annoyance made by the roar, whistle, soot and smoke of the locomotive." (Citation omitted.)

It is patent from a comparison of those two decisions, unless our code alters the rule (which we shall later consider), that Pennsylvania decisions make it impossible for us to adopt the Commonwealth's contention in this case. Of course, in any eminent domain case, effects upon value must be substantial and not slight, attenuated, remote or speculative. As stated in Clements v. Phila. Co., 3 Pa. Superior Ct. 14, 20 (1896):

"As elements of compensation, only those injuries are to be considered which arise so naturally as to be foreseen with reasonable certainty, and are so definite in character that their injurious effects

can be presently calculated, and measured, pecuniarily, with reasonable accuracy. Viewers and juries are permitted to take into account only injuries certain and definite in their nature and consequences, and substantially affecting the immediate market value of the land; while claims for damages based on theories, conjectures and possibilities have not been allowed."

See also Fecher v. Allegheny County, 313 Pa. 191, 169 Atl. 87 (1933); 29A C.J.S., §154, 653.

Substantiality of causal effect is a matter of degree; the effect must be sufficiently perceptible to create an appreciable effect on market value, but need not have such impact as to produce an effect different in kind. In questions of noise, substantiality is primarily a function of *proximity* of noise source to the land affected, and these variations are within the competency of jurors to determine from the evidence. A rule of law which ignores those effects and differences and assumes that jurors "should not be expected to, and cannot fairly, consider fine points of distances" as stated in Watkins, supra, would run counter to the view expressed in Comstock, supra. Compare Shano v. 5th Ave. & High St. Bridge Company, 189 Pa. 245, 42 Atl. 128 (1899).

In Berberich v. Pennsylvania Turnpike Commission, 12 D. & C. 2d 232, 236-7 (1956), a portion of plaintiffs' land was taken for highway purposes. In dealing with the question of highway noise as an element in fixing the after value of the unappropriated residue, the court said:

"The general rule in condemnation proceedings is that the Commonwealth is not liable for consequential damages unless the same be connected

with an actual taking of land of the property owner involved, regardless of how little land is taken. Here in this case there is an admitted taking of 4.301 acres of plaintiffs' land, and the court has no difficulty in holding that for certain types of consequential damages, such as allowed by the board of view in this case, in 'making petitioners' land less quiet and desirable for residence' and the 'noise and fumes from the Pennsylania Turnpike Extension' may be considered in determining the fair market value of the property of plaintiffs as affected by the condemnation or the taking."

From these decisions, it is apparent that in determining the value of land remaining after part of the whole is taken for highway construction, the necessary effects of noise upon market value of the residue after the taking may be considered by the jury as a factor affecting such value, provided the effects are sufficiently substantial to have appreciable impact upon such value, and it is immaterial whether or not those effects are shared by the community or vicinage generally along the highway: 13 P.L.E. §41, 258, 260-61.

In Lamont v. West Penn Power Co., 300 Pa. 78, 84, 150 Atl. 88 (1930), although not a noise case, the court enunciated the same general principle as follows: ". . . [W]hen the taking is confined to a part of the owner's land, he is entitled to recover for all damages to his remaining land, *whether special or shared by the public generally*, provided they flow from the appropriation, since he is constitutionally to be made whole for all injuries resulting from the taking of his land." (Emphasis supplied.)

An essential ingredient of the rule of law we have stated is that a part of the claimant's land has been

actually taken, as distinguished from being damaged or injured without a taking. This crucial distinction between the two types of case is made clear in Baker v. Pennsylvania Railroad, 236 Pa. 479, 483-4, 84 Atl. 959 (1912), where a railroad took part of plaintiff's land for construction thereon of its track. In passing upon the owner's right to have noise effects considered in determining market value of the residue, the court stressed the importance of a taking:

"One of the controverted questions is whether in such a case smoke, noise, dust and dirt, resulting from the operation of trains, over the land taken, may be considered as elements of damage tending to depreciate the value of the remaining portion of the tract not appropriated. That such elements of damage may be considered in estimating the depreciation in market value has been squarely ruled by this court in those cases in which there was an actual taking of the land of the owner for a public use: [citations omitted]. In the application of this rule some confusion has arisen by attempting to apply the same measure of damages to cases in which the railroad tracks were laid upon a public street, already dedicated to a public use. In such cases an abutting property owner is only injured to the extent of the increased servitude, and must prove special injuries different in kind and degree from those suffered by the public generally. For this reason it has been held that smoke, noise, dust and dirt, which must necessarily affect all property holders abutting on the street, cannot be considered as an injury special to any particular owner so abutting. In this class of cases such elements of damage may not be considered, but a different rule applies

where, as in the case at bar, there has been an actual taking in the first instance."

Since the court distinguishes cases where there is a "taking" from those in which there is "special injury" as respects the relevancy of noise effects, we should have some basics of eminent domain law in mind before going further. In Sarver v. Com. (No. 1), 36 Somerset 180 (1977), we discussed many of those basics which can be stated as follows:

(1) The power of government to take or use private property for a public purpose is an inherent attribute of sovereignty and is not derived from any constitutional or statutory provision; that power is absolute and unlimited in the absence of constitutional or statutory limitation placed on it, such as the duty to compensate the owner. Consequently, an owner of private property must be able to point to some constitutional or statutory provision requiring payment in order to obtain compensation.

(2) The Fifth Amendment of the United States Constitution provides in part ". . . nor shall private property be taken for public use, without just compensation." This provision is binding on both the Federal government and upon the states.

(3) The Pennsylvania Constitution contains two eminent domain provisions. Article 1, §10, says in part: ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

Article 10, §4 (formerly Article XVI, §8) states: "Municipal and other corporations invested with the privilege of taking private property for public

use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements and compensation shall be paid or secured before the taking, injury or destruction."

(4) These constitutional provisions reflect a historical conceptual dichotomy between a "taking" of property and an "injury" to property, as respects the right to public compensation. Defining the difference comprehensively is difficult if not impossible to do. See Sarver v. Com. (No. 1), supra, 189; 29A C.J.S. §§110-111, pp. 442-60; §110-111, footnote [7], infra, quoting Nichols on Eminent Domain. We need not strain to construct such a definition because, in this case, there is clearly a taking by physical seizure and taking of title of a portion of plaintiffs' soil in fee and its aerial and subsurface extensions. Where land is harmed by a public improvement without such a physical seizure, questions may arise whether there is a taking (de jure or de facto) or, instead, a constitutional injury.

(5) Where there is injury but no taking, the courts have recognized only certain types of "special injury" as constitutionally compensable; others are not so recognized and are damnum absque injuria: Snitzer, Pennsylvania Eminent Domain (Bisel 1965) §612. Again we have no need for comprehensive definition because it is well settled in Pennsylvania that, without a taking, noise injury which is common to all in the vicinity of the improvement, is damnum absque injuria and is not constitutionally compensable. See Jones v. Erie & Wyoming Valley R.R., 151 Pa. 30, 45, 25 Atl. 134 (1892), in which the railroad construction was upon the public highway easement abutting plain-

tiff's property, without taking any of his property. On the subject of noise and associated effects, the court said:

"It is too well settled to need a citation of authorities that mere exposure to noise, smoke, dust, and the danger of horses becoming frightened by a moving train is not an actionable injury. Such an exposure is an inconvenience, and sometimes a source of danger, to all persons who live near a railroad, or who have occasion to travel along a street that is crossed by one. Such an inconvenience or danger is common to many persons but special to none. It may be greater to those who live or do business near the line of the road, but it affects all who have occasion to come near it, or pass along it, or over or under it. It is the same in kind, though greater in degree, as the inconvenience arising from the noise, confusion and dust incident to travel upon a paved street or a common highway. It is the necessary result of the lawful operation of a railroad and part of the price paid by society for the increased speed and convenience in the transportation of persons and property which it affords."

Accordingly, where there is no taking, noise and associated effects from railroad or highway traffic may not be considered as an element of damage unless its degree of impact on the property in question is so great as to produce a special injury of a kind different from that suffered by others in the vicinity of the improvement. In non-taking cases, the special injury must be different not only in degree, but in degree and kind: Foust v. Pennsylvania Railroad, 212 Pa. 213, 61 Atl. 820 (1905); Pennsylvania R. Co. v. Marchant, 119 Pa. 541, 558, 13 Atl. 690 (1888); Erie City's Appeal, 297 Pa. 260, 147 Atl.

58 (1929); compare Hall v. Delaware Western R.R. Co., 262 Pa. 292, 298-9, 105 Atl. 98 (1918). As respects noise effects, the difference between the applicable rules in the two classes of cases (taking v. non-taking) is clear and striking.

(6) The United States Constitution imposes eminent domain liability for compensation only for a taking, not for damage or injury without a taking. The Pennsylvania Constitution (Article 1, §10) imposes eminent domain liability upon the Commonwealth only for a taking and not for damage or injury without a taking, but it imposes (Article 10, §4, supra) upon municipal and other corporations having the right of eminent domain liability for taking and for special injury.

Another related aspect of pre-code law, dealing with beneficial aspects of a condemnation, should be clarified here. The Supreme Court early held that in determining the after value in the case of a partial taking, the jury should consider as an offset against damages the value of any benefit accruing from the project to the unappropriated residue, provided that the benefit is special to the property and is not such as is common to the public: 13 P.L.E. §66, 302. The test for determining whether a benefit is special or common is whether the benefit has advanced the claimant's market value beyond the general appreciation in the neighborhood; if it has not done so, the benefit is general and not discountable; if, however, it has done so the whole value of the benefit is discountable, not merely the excess of the claimant's increase in value over the general increase. See Mahaffey v. Beech Creek R.R., 163 Pa. 158, 29 Atl. 881 (1894); Pittsburgh, Bradford & Buffalo Railway v. McCloskey, 110 Pa. 436, 1 Atl. 555 (1885); Achenbach v. Slate Belt T. &

T. Co., 73 Pa. Superior Ct. 568 (1920); compare: Aswell v. Scranton, 175 Pa. 173, 34 Atl. 656 (1896); Gaughan v. Scranton, 266 Pa. 586, 100 Atl. 682 (1920). Special benefits are only a set-off against compensable damages; they may have the effect of wiping out all compensation otherwise payable and result in a general verdict for the condemnor, but if benefits exceed damages there may be no verdict against the landowner in the absence of a statute specifically authorizing such an assessment. See Long v. Harrisburg, etc. R. Co., 126 Pa. 143, 19 Atl. 39 (1889); Snitzer, supra, §606-1.22.[1a]

Thus, where there is a taking with offsetting benefits, the value of the benefit is deductible if, but only if, the benefit is special to the property in question and is not common to the vicinage; but, since we previously concluded that, in a taking case, all substantial adverse effects upon market value are considerable according to the degree of their impact, whether common to the vicinage or not, it follows that in a taking case deductible *benefits* must be special and uncommon but *damages* considerable may be general and need not be special or uncommon. This statement of the law of damages and benefits is consistent with judicial declarations. Thus, in Hornstein v. Atlantic and Great Western Railroad, 51 Pa. 87, 90 (1865), where a portion of the property was taken, the court said:

"In estimating the disadvantages resulting from the road, consequential or speculative damages are to be rejected, and in estimating the advantages, such only as are special and peculiar to the property in question are to be considered, and not such as are

---

[1a.] Compare this excess market value test for determining special benefit with the degree-kind test for determining special damage or injury previously discussed in this opinion.

common to the public. It is the business of the viewers in the first instance, and on appeal, of the jury, to *balance the advantages that are special against the disadvantages that are actual,* and with the aid of whatever testimony is laid before them, to find out as well as they can how much less the land would fetch in market by reason of the road, and that sum, which will represent what has really been taken away from the owner, should be given back in damages." (Emphasis supplied.)[2] See also Pittsburgh Railway v. McCloskey, supra.

As stated in Snitzer, supra, §606-1.32:

"In a partial taking case, any damage to the remainder which is not remote or speculative can be considered in arriving at the after value. It has

2. The context of the foregoing quotation indicates that the phrase "consequential or speculative damages" uses the term "consequential" as synonymous with "speculative," and not in its modern sense of damages compensable without a taking.
The term "consequential damages" has been used in different senses. "The term 'consequential damages' is ambiguous in character and is not truly relevant to any discussion respecting different classes of damage. In the proper sense of the term all damages must of necessity be consequential, since all damage is the consequence of an injurious act. Use of the term introduces an equivocation which is fatal to any hope of a clear settlement of the question. It means both damage which is so remote as not to be actionable, and damage which is actionable. . . . The distinction seems to be between less and more remote damage and, in the last analysis, seems to be purely a matter of degree." Nichols on Eminent Domain (Matthew Bender 1976) §6.4432.
Although the early Pennsylvania cases like Hornstein, supra, use the term as stated in Nichols, supra, more modern Pennsylvania law regards "consequential damages" as those damages payable by a municipal or private corporation where there is compensable "special injury" and no taking. See Puloka v. Com., 323 Pa. 36, 185 Atl. 801 (1936); Pennsylvania Railroad v. Marchant, supra, 557-8.

never been the law that *only* special damage peculiar to the partially condemned tract as distinct from the community or neighborhood was to be considered. The special-general dichotomy is only pertinent to the problem of benefits. . . . No doctrine concerning the distinction between general and special *damage* has ever been developed concerning elements considered in arriving at the after value in a partial taking case." (Citations omitted, emphasis in original.)

Our discussion of the pre-code law of Pennsylvania can be summarized like this:

(1) *If there is a partial taking,* noise and associated annoyance from the normal highway traffic which have a substantial adverse effect upon the market value of the unappropriated residue because of the proximity of improvements or areas of the residue to the road, are elements considerable in fixing the residue's value after the taking, even though those effects are commonly suffered by the community in the vicinity of the road,[2a]

(2) *If there is a partial taking,* the value of benefits to the residue are set off against the damages, if the benefits are special to the residue and not shared generally by the community;

(3) *If there is no taking,* both damages and ben-

---

2a. This rule is merely an application of the well-settled principle of Pennsylvania eminent domain law that where there is a *taking,* the Commonwealth is liable for all damages which are causally related to the taking, even though those damages or elements of damage are such as, in the absence of a taking, would be classified as "consequential" for which the Commonwealth would not then be liable. See Sarver v. Com. (No. 1), supra.

efits must be special to the property and not common to the community in order to constitute a constitutional "injury" for which a municipal or other corporation having the right of eminent domain must pay just compensation, and railroad and highway noise and associated annoyance which are common to the community are not a considerable element of damage and are damnum absque injuria.

The effect of the Commonwealth's contention in this case is to apply the "injury" rule to a "taking" case as respects highway noise, contrary to the pre-code law of Pennsylvania. To justify this, Commonwealth counsel relies on authorities in other states (which we find unpersuasive), and upon Code §606 to which we shall now turn.[2b]

B. Eminent Domain Code:

The Eminent Domain Code §606, 26 P.S. §1-606, provides as follows:

"In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken. Future damages and general benefits which will affect the entire community beyond the properties directly abutting the property taken

2b. For a good statement of the state of the authorities elsewhere, see Nichols, supra, §6.45, particularly footnotes 3 and 4 thereto.

shall not be considered in arriving at the after value. Special benefits to the remaining property shall in no event exceed the total damages except in such cases where the condemnor is authorized under existing law, to make special assessments for benefits."

We find no helpful decisions construing this section, but it contains phraseology, familiar in pre-code law which we have discussed, which raises the question whether it makes a change in prior law by requiring that, in a case of partial taking as we have here, both damages and benefits must be special and not common to the community in the neighborhood of highway.

The problem arises from the language of the first sentence of section 606 mandating consideration of "damages or benefits specially affecting the remaining property" which appears to limit damages to those not common to the community. As stated in Snitzer, supra, §606-1.32: "This language causes some difficulty." In a 1963-1964 Survey of Pennsylvania Law in 26 University of Pittsburgh Law Review 243, the note on the Eminent Domain Code of 1964 states at 249:

"A provision which may prove to be controversial is that contained in section 606 which states that, in determining the fair market value of the remaining property after a partial taking, consideration will be given to the use to which the condemned property is to be put and the damages or benefits specially affecting the remaining property. This reintroduces into the law of eminent domain damages the concept, originally developed in early railroad cases, of a benefit from the improvement

offsetting the damages occasioned by the loss of the physical area taken."[3]

In our judgment, section 606 was intended to be declaratory of prior law, not to change it, but is careless in the use of the term "specially" in relation to damages.[3a] We draw this inference from the language of the third paragraph of the comment of the Joint State Government Commission to section 606, the relevant part of which reads as follows: "It is also the purpose of this section to provide, *in accordance with existing law*, that general benefits and damages which accrue to the community as a whole are not to be considered in arriving at the after value. Only special, particular and direct benefits and damages to the remaining property may be considered in arriving at the after value." (Emphasis supplied.)

In terms of pre-code law, the term "specially affecting" would seem to refer to damage elements which differ in kind from those common to the vicinity, not to those common to the vicinity and which differ merely in degree due to proximity. But in pre-code law, the latter sort of damage elements (including highway noise) are allowed in fixing the after value of the residue in a case of partial taking.

---

3. The writer does not cite the early railroad cases referred to.

3a. The code fails to distinguish proximity effects (which are a matter of degree) from differences in kind which produce "special" damage or injury. "A difference in degree may be so great as to create a difference in kind." Beggs v. Somerset Borough Zoning Board, 34 Somerset 161, 177 (1976); see also Cohen v. Samuel, 367 Pa. 268, 273, 80 A. 2d 732 (1951).

Since there is no intent to change the law, section 606's phrase "specially affecting" should be construed consistent with pre-code law. Otherwise, section 606's command to give consideration to proximity is meaningless.

We also note that the second sentence of section 606 is consistent with our view that no change in law was intended, in stating that: "Future damages and general benefits which will affect the entire community beyond the properties directly abutting the property taken shall not be considered in arriving at the after value." The reference to general effects upon the entire community modifies only the phrase "general benefits," not the initial phrase in the sentence "future damages" which are never considerable in eminent domain cases. If the drafters of the code had intended to proscribe allowance of general *damages* common to the community, it is expectable that in the second sentence of section 606 they would have referred to "general damages and benefits" instead of merely to benefits.

More important in the interpretation of code section 606 is the unconstitutionality of it if it makes the change suggested by the Commonwealth. The pre-code decisions allowing consideration of substantial noise effects where there is a taking define the measure of the Commonwealth's *constitutional* obligation of just compensation for a taking; so viewed, the code may not change that rule. As Snitzer, supra, states in section 606-1.32: "To the extent that this section [606] is declarative of existing law it causes no difficulty. If only special damage, peculiar to the remaining tract is to be considered, the constitutional requirement of 'just com-

pensation' may be violated." See also Lamont v. West Penn, quoted supra.

We reject the Commonwealth's contention and construe code section 606 consistent with pre-code law on the subject of general and special damages in taking and non-taking cases as we have found it.[4]

This difference in cases of *taking*, in which all elements of substantial and adverse effect on market value whether or not common to the community are considered, and cases of *injury* where there is no taking and where elements of substantial and proximate effect on value are considerable only if the effect is special to the property and not common to the community, necessarily produces some inequities in hard cases, which is so often true of rules of law which must draw lines of distinction and demarcation. Injustice seems most evident in those instances where the land of one owner is so located that the improvement takes an insignificant piece of it and his next door neighbor suffers the same

---

4. We need not consider the plaintiffs' argument that the references to noise at the trial were so slight and inconsequential as to have no effect on the verdict.

We also note that the Commonwealth's ninth point for charge declares as a matter of law that highway noise may not be considered, rather than submitting to the jury the question of whether the noise was a special damage to plaintiff or a general damage to the surrounding community which is ordinarily a jury question. See Foust v. Pennsylvania Railroad, supra. In order, however, to justify submission of that issue to the jury, there must first be sufficient evidence of special injury rather than evidence of merely proximity effect (amount or degree of noise impact); in this case, we think the evidence shows damage of the latter type and would not be sufficient to submit the issue of special injury if that were required.

consequences but the improvement needs and takes none of his soil. There is respectable judicial opinion that the purpose of article 1, §10 of the Pennsylvania Constitution is to remedy that by requiring that both neighbors be treated the same according to the more liberal rule applicable to the first neighbor whose land was partly taken, whether or not the effect is common to the community, where the condemnor was a municipal or private corporation. See Pennsylvania R. Co. v. Marchant, supra, dissenting opinion. But the majority in Marchant concluded otherwise and it has since been the law in Pennsylvania that absent a taking only special damages not common to the general neighborhood in the vicinity of the improvement constitute a compensable *injury* in the constitutional sense.[5] A reading of the opinions shows that a

---

5. Marchant, supra, gave as the primary reason for distinguishing the taking and non-taking cases that in the former the damages are allowable for *construction* of the improvement, where as in the non-taking cases the damages result merely from *operation* or use of the improvement. This reasoning does not fully explain the difference in the two classes of cases because even in a taking case damages from operation are allowable if they will be the necessary result of lawful and proper operation of the improvement (as distinguished from its later negligent operation) and can be determined at the time of taking. See Lamont v. West Penn, supra; Hamilton v. Pittsburgh, Bessemer & Lake Erie R.Co. 190 Pa. 51, 42 Atl. 369 (1899); Comstock v. Clearfield & Mahoning Railway Co. supra; Setzler v. Pennsylvania Schuylkill Valley R.Co., 112 Pa. 56, 4 Atl. 783 (1886); Wilmington & Reading R.Co. v. Stauffer, 60 Pa. 374 (1869); Hornstein v. Atlantic, supra; Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411 (1821); Schuster v. Central District & Printing, supra; Clements v. Phila. Co., supra. The same rule applies in an injury (non-taking) case; 13 P.L.E.,§42, 261. Subsequent decisions state the criterion for

substantial factor in judicial thinking which led the courts to disallow damages for widespread noise in a non-taking case is the realization that allowing such damages would make necessary public improvements too costly and would bring progress to a halt. See Snitzer, supra, section 601-2.[6]

But there is more to the taking-injury dichotomy than that. It goes back to basic common law fundamentals which even today undergird our law and make considerable sense. In Marchant, the court states that the purpose of the constitutional injury provision was merely to make municipal and private corporations exercising the right of eminent domain responsible in the same way that the com-

---

identifying elements of damage considerable in an injury (non-taking case) to be that such damages be special and peculiar to the land and not common to the vicinage, apparently dropping the construction vs. operation notion. See Jones v. Erie & Wyoming R.R., supra; Pennsylvania Co. v. Pennsylvania Schuylkill Valley R.Co.; 13 P.L.E., §41, 258.

6. The majority opinion in Marchant by Justice Paxson says, in part:

"If it is the mandate of the constitution it must be obeyed. It is our duty to give effect to the will of the people lawfully expressed, and we shall perform it though it stops every wheel in the Commonwealth. But it is no part of our duty to write into the constitution something which the people have not placed there. . . .

"There are some inconveniences which . . . must be endured by individuals for the general good; otherwise, we would have an Utopia, where the whistle of the locomotive, the hum of the spindle, and the ring of the hammer are never heard. It might be pleasant to dwell where there is nothing to offend the eye, the ear, or any of the senses, but in this age of rapid development in every branch of industry, it would be difficult to find such a spot in the vicinity of our large cities." 557, 561.

mon law makes individuals responsible for injury to the land of others:[7] Marchant, 554, 561. The common law and our present law regard an intentional and direct trespass upon the surface of land of another (quare clausem fregit) and trespassory activities thereon (comparable to a *taking*) as much more offensive and reprehensible than non-trespassory intrusions and effects (even though intentional in the sense that they are certain to occur) which come through the air such as noise, odors, smoke, interference with light and air, and the like, which are produced by an adjoining or nearby landowner who is making a lawful use of his own land (comparable to the *injury* cases). In the former the law of trespass applies, in which the intentional trespasser is automatically responsible for all resulting harm irrespective of the reasonableness or unreasonableness of his conduct. See Makoczy v. Weaver, 33 Somerset 193 (1976); Appendix at 202.

---

7. Today, constitutional "injury" is construed somewhat broader than injury at common law. Today, ". . . compensation is required not only when there is an injury that would be actionable at common law, but also in all cases in which it appears that there has been some physical disturbance of a right, either public or private, which the owner of a parcel of land enjoys in connection with his property and which gives it additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally." Nichols, supra, §6.441[3]. But compare the diversion of traffic cases: Hession Condemnation Case, 430 Pa. 273, 242 A. 2d 432 (1968); Lenhart v. Com., 345 Pa. 528, 29 A. 2d 22 (1942), appeal from this court and cases therein cited; Heil v. Allegheny County, 330 Pa. 449, 199 Atl. 341 (1938); Pittsburgh & Lake Erie R.Co. v. Robinson, 95 Pa. 426 (1880); Snitzer, supra, §606-1.217.

In the latter the law of nuisance applies where liability depends on the reasonableness of the actor's conduct and a weighing of private rights and social utility: Restatement, Torts, §826 comment b; Nichols, supra, §6.4433. In that weighing process, an important element is that all landowners must put up with some annoyance, inconvenience and interference from the lawful activities of another in organized society: Restatement, Torts, §822, comment j. The parallels between common law tort concepts and eminent domain law are striking: a taking of one's land against his will, however slight the amount taken, is a much more offensive invasion of property and privacy, warranting imposition of full responsibility for harmful consequences to the land value, than is a non-taking activity lawfully conducted on one's own land which interferes in greater or less degree with the use and enjoyment by a neighbor of his land. Efforts to develop more refined concepts to avoid inequitable results in hard cases should never cease, but long experience shows that such searches are seldom wholly successful; and it should not be thought that the taking-injury dichotomy is entirely irrational or productive of anti-social results. Although there are those who think that the effort should be to eliminate governmental liability for any damage not common to the community (see Nichols, supra, §6.441[3]), there are others who think the effort should not be to restrict the range of compensable injury but to expand it to avoid imposing on private property owners any part of the cost of public improvements except as taxpayers (see dissenting opinion in Marchant, supra). It is understandable that counsel for the Commonwealth seeks the limit-

ing approach, but we think his effort is not supportable in present Pennsylvania law.[8]

• • •

## ORDER

Now, January 16, 1979, the Commonwealth's motion for a new trial is denied and the prothonotary is directed to enter judgment on the verdict.

I concur: Norman A. Shaulis, *J.*

---

8. In People v. Volunteers of America, supra, fn. 1, at 435 (4th Dist. App. Cal. 1971), the court in upholding the rule that a taking carries with it liability for all damages which affect market value, including highway noise common to others, even though such elements cannot be considered in the absence of a taking, said:

"It has already been pointed out that the test of whether the property taken is used for the portion of the project giving rise to the detrimental conditions is an arbitrary one . . . It is also obvious that adjacent property is damaged to the same degree by the detrimental factors of a freeway whether no property is taken, whether a mere narrow strip is taken, or whether a substantial portion of the property is taken for the construction of the improvement . . . Until such time as provision is made for compensation of those who are merely adjacent . . . , they presumably may not recover proximity damages. Two wrongs do not make a right. Though illogical, the taking of the strip warrants the allowance of consequential damages under existing precedents. . . .

"In any event, with changing concepts of the rights of an individual to his privacy and to enjoy an environment unpolluted by noise, dust and fumes, it may not be improper to consider whether other means of transportation should be substituted for the private automobile. Any consideration of this question is clouded if the true economic burden of providing freeways for motor vehicle traffic is concealed by requiring adjacent owners to contribute more than their proper share to the public undertaking. If there is, as in this case, warrant for the compensation of such an owner, because a portion of his property has been taken, it should be granted if established by proper proof."